Mr. Justice Hunt
delivered the opinion of the court:
This is an appeal by the United States from a judgment of the Court of Claims. The claimant takes no appeal.
It appears by tbe proceedings below that the claimant sought to recover for three items, upon which he alleged that the United States were indebted to him. There were—
1. A bonus of $250 per month upon an account with the *115 United States extending through a period of six years, and amounting to $18,000.
2. For damages in the breaking up of his purchasing business by an eviction, against which he claimed to be indemnified by the United States, the sum of $28,000.
■3. For storage of goods belonging to the United States during the years 1856 and 1857, the sum of $1,370.75.
The latter claim only was allowed, and from the allowance of that claim the United States now bring their appeal.
Much the greater part of the time consumed in the argument of this case was bestowed upon the two items which were rejected by the Court of Claims. This was quite unnecessary. By not appealing, the claimant has declared himself to be content with the disposition of the case by the Court of Claims. The appeal brings up only the claim allowed. The rejected items, therefore, will receive no consideration, except so far as may be necessary for a proper understanding of the item allowed.
In July, 1851, the Secretary of the Treasury, on behalf of the United States, entered into an agreement with James Eldredge for the erection of certain warehouses by him in the city of San Francisco. The Secretary agreed to lease the premises for the period of ten years. The rent for the first two years was fixed at $6,000 per month, and it was agreed that at the expiration of every two years thereafter the Secretary had the privilege of having the rent fixed for the ensuing two years by a commission, of which the Secretary should appoint one member, El-dredge should appoint another, and the two thus selected should choose a third.
In February, 1866, the collector of the port óf San Francisco, by authority of the Secretary of the Treasury, entered into an agreement with the claimant, Patrick J. Hickey, by which the United States leased to him the warehouses mentioned, during the term of the lease first mentioned. Hickey agreed to pay $500 per month until the 1st of May following, at which time an appraisement was to be made as by the terms of the original lease, and thereafter Hickey agreed to pay to the United States the sum which should be awarded to Eldredge for the two years ensuiug, and after that time to pay such sum as should be awarded from time to time for the terms of two years thereafter ensuing: uProvided, nevertheless, That the sum of *116 $250 per calendar month.is hereby saved and reserved to the party of the second part during the term of the aforesaid lease, as a bonus to the party of the second part, * * to be paid at’ the expiration of each month, * * monthly until the completion of the same.” It is upon this clause that the claim of $18,000 for a bonus arises. It is, however, unnecessary to discuss this, for the reason already given.
Under this agreement Hickey paid rent as agreed until May, 1856. The claimant appointed one person to appraise the future rent. The Secretary appointed another,. They failed to agree— failed to appoint an umpire; and the Secretary of the Treasury, although notified of such failure, took no further steps in the matter.
In April, 1857, the Secretary, without the knowledge of Mr. Hickey, entered into an agreement with Mr. Eldredge, by which the United States transferred to him “ all their right and title and interest in and to the said lease, and authorized him to sue for, collect, and recover the Hickey lease, and the rights to the rents reserved under the same,” and agreed to pay him $110,000 in satisfaction of all future claims for rent under the original lease.
In August, of the same year, Eldredge took'proceedings against Hickey for non-payment of rent on the lease, and dispossessed bim of the leased premises. It is for this eviction that damages are claimed by Mr. Hickey, which it is not necessary to consider, as he has not appealed from the judgment which disallowed them. The claim allowed for storage was while Mr. Hickey was in possession of the warehouses as above mentioned.
This lengthy statement has seemed to be necessary to an understanding of the claim of the United States to a set-off of $9,000 for rent from May, 1856, to November, 1857, on the lease made by them to Mr. Hickey. It is said that the transaction with Hickey was an assignment to him by the United States, and not an under-letting. It was not an assignment, as the terms between the United States and Hickey were different from those between Eldredge and the United States. The United States agreed to pay $6,000 per month, and had a privilege of an ap-praisement at their option. Hickey agreed to pay $500 per month only for the first two months, was to have in substance a deduction of $250 for every montli thereafter by the United *117 States, and no rent after May 1 was fixed, unless an appraisal should be made. (2 Black. Com., 327 m.) It is difficult, how-' ever, to see the importance of the difference in this proceeding, whether it was an assignment or sub-letting. The short answer to the counter-claim is that the United States had assigned -to Mr. Eldredge all their claim and demand for the rent upon this lease, and therefore could have no claim against Hickey by virtue of it. The rent was paid by Hickey to May 1, 1856. After that time he refused • to pay rent, on the ground that there was no appraisal fixing the amount. No appraisal has ever been made. No evidence was given before the Court of Claims of the rental value of the premises, and I see not how more than nominal value could in any event be claimed. But beyond this, the United States, on the 13th of April, 1857, transferred and assigned to Eldredge all their right, title, and interest in and to the lease, and authorized him to sue for and recover the rents reserved to the United States as fully as they could do. It was added: “It being distinctly understood that it is the object and purpose of this agreement to put' the said Eldredge in the place and stead of the United States, so far as concerns the rights of the United States under the lease aforesaid,” It was by virtue of the ownership of the lease acquired under this assignment that Eldredge took proceedings in the California courts, which resulted in the eviction and dispossession of Hickey from the premises described in the lease. This assignment, in the terms stated, carried all the interest in the rents already accrued, as well' as rents thereafter to accrue. It was broad and comprehensive, carrying every interest in, or connected with, or arising out of the lease. There was no claim or demand against Hickey existing in the United States under this lease, and consequently there was no counter-claim to be interposed against his demand for storage allowed by the judgment appealed from. The decision of the Court of Claims was right, and must be affirmed.