Drake, Ch. J.,
delivered the opinion of the court:
On the 7th of November, 1877, Campbell If. Peck instituted this suit in this court.
On the 10th of February, 1879, he obtained judgment for $43,113.63, from which the defendants appealed.
At no time until now was it made known to this court that on the 31st of August, 1878, he filed a petition in bankruptcy and was adjudged a bankrupt, and that John W. Hobbs became his assignee in bankruptcy.
*366 In the schedule of his property, the said Peck set forth the claim involved in this ease, in the following terms:
“ Glioses in action.
“D. — Unliquidated claims of every nature, with their estimated value.
u 6. Claim against the Government of the United States of America on account of contract with B. C. Card, chief quartermaster or commissioner for Department of Dakota, of date August 17, 1876, held by E. F. Brownell as collateral, $57,000.”
On the 2d of December, 1879, the said Peck died intestate, and on the 8th of that month Helen A. Peck became his admin-istratrix.
On the 19th of January, L880, the Supreme Court of the United States allowed her to be substituted for Campbell K. Peck in the cause.
Before that time the said Hobbs, as assignee of Campbell K. Peck, applied to the Supreme Court to be substituted for him in the cause; but the motion was denied, on the ground that the proper notice of it had not been given to the administratrix.
On the 2d of March, 1880, the proper notice having been given, the assignee renewed that application ; which, on the 22d of that month, was denied by the Supreme Court, upon the following grounds, stated in the opinion of the court:
u It is evident from this brief rehearsal of facts that there is a controversy about the disposition of the proceeds of this claim between the creditors for whose benefit the claimant made the appropriation referred to and the assignee in bankruptcy. This is an original and separate controversy, distinct from the merits of the case on the appeals, and we are not disposed, even if we have the power, to take it up in this collateral way and decide upon the rights of the parties, which we would probably be obliged to do if we granted the motion now made by the assignee. The latter has lain by ever since August, 1878, when the claimant was declared bankrupt, and allowed the case to go on in his name, at his expense, and under his direction and management, or that of the creditors for whose use he was prosecuting the claim. Costs and expenses have been incurred by them, and arrangements have been made with counsel which have at least some title to equitable consideration; and injustice might be done if we should now, by main force, without going into an original investigation, which, to say the least, would be of very doubtful propriety, place the assignee in control of the cause. From the papers laid before us, it appears that the district court *367 has already assumed partial jnrisdictiou of tbe matter; and, as that court can do fall justice between all the parties, we think it better that the controversy should be disposed of there or in some other tribunal having original jurisdiction in such matters, than by this court, in a collateral way.”
The Supreme Court affirmed the judgment of this court; and on the 22d of April, 1880, it's mandate of 'affirmance was filed here, in which the order appears substituting the administratrix for Campbell K. Peck, and directing this court to allow an additional amount of $2,660 to the claimant. . •
On the 31st of March, 1880, the said John W. Hobbs filed a motion in this court to be substituted as claimant instead of the administratrix; and that motion is the subject of the present ■controversy.
It raises the simple question, Which party is entitled by law to become the claimant on the record, the administratrix or the assignee in bankruptcy ?
Were this question now raised for the first time in this case, there could not, as we conceive, be any room for doubt that the assignee had all the legal right to prosecute this claim, and that the administratrix has no legal right at all to do so.
More than a year before Peck’s death the claim had passed,. by operation of law, out of him, and into his assignee in bankruptcy ; so that, -when he died, it.was in no sense an asset of his estate. The right of the administratrix could attach to no property of the intestate but such as -was acquired by him after he was adjudged a bankrupt. As to any claim he had at the time he was so adjudged, the title to it has, since then, never been anywhere else than in the assignee.
Such being the case, shall not the assignee be made the claimant to prosecute his own legal claim to a finality ? Section 5047 of the Iievised Statutes provides as follows :
“ If, at the commencement of the proceedings in bankruptcy, an action is pending in the name of the debtor for the recovery of a debt or other thing which might or ought .to pass to the assignee by the assignment, the assignee shall, if he requires it, be admitted to prosecute the action in his own name, in like manner and with like effect as if it had been originally commenced by him.”
This language would seem hardly to be open, in any part of it, to controversy. It fixes the right of the assignee to be substituted for the bankrupt in any pending suit, for the recovery *368 of anything which passed, or might or ought to pass, by the assignment.
But though the right is fixed, it is not made the duty of the assignee to become the plaintiff in the suit. It is in his discretion to allow the suit to go on in the bankrupt’s name. By so doing lie does not lose his right to whatever may be recovered; nor does he thereby divest himself of the title vested in him -by the assignment.
So far we do not understand the administratrix’s counsel as questioning the views we have expressed; but they urge that the action of the Supreme Court in substituting Peck’s admin-istratrix makes the matter, so far as this court is concerned, res judicata; and that we, therefore, have not legal authority to remove her from the record and give her place to the assignee. This proposition seems to us untenable.
If the Supreme Court had specifically ordered us to render judgment in favor of the administratrix, we would obey the order; but such is not the tenor of the mandate.
It is urged that, though that has not been ordered, yet the substitution by that court of the administratrix does, proprio vigore, entitle her to have the judgment rendered in her favor. We do not so regard it.
When Peck’s death was suggested to the Supreme Court, there was no longer any claimant on the record. In order to the proper decision of the cause, it was necessary that there should be a claimant$ and the court, to that end, allowed the administratrix, on her own ex parte motion, to take that position. In doing so,.it did not adjudge any contesting right of any other person; did not decide or hear a controversy; simply let in the administratrix, so that the case then before it could there progress to a final hearing and decision; and when the assignee applied to supersede and take the place of the administratrix, refused to allow him to do so.
Was that refusal a final adjudication of the assignee’s right to become the claimant and prosecute the suit ? Let that court’s own words settle that point. They say:
“It is evident from this brief rehearsal of facts that there is a controversy about the disposition of the proceeds of this claim between the creditors for whose benefit the claimant made the appropriation referred to, and the assignee in bankruptcy. This is an original and separate controversy distinct from the merits *369 of tbe case on the appeals, and we are not disposed, even if we have the power, to take it up in this collateral way and decide upon the rights of the parties, which we would probably be obliged to do if we granted the motion. now made by the assignee.’7
This was a clear refusal to decide the merits of the conflicting demands of the administratrix and the assignee to represent Peck in the case. It simply left them as they then stood; the former on the record, and the latter not.
But the court went on further to say:
“ From the papers laid before us, it appears that the district •court has already assumed partial jurisdiction of the matter; and, as that court can do full justice between the parties, we think it better that the controversy should be disposed of there, or in some other tribunal having original jurisdiction in such matters, than by this court, in a collateral way.”
These words indicate a purpose, first, to leave the controversy open; and, second, to.remit its settlement to some inferior court. Therefore the question of legal right, as between the adminis-tratrix and the assignee, to Peck’s place in the case, was not res judicata in that court.
And now what is the attitude of the matter? It presents this alternative : TVe are to decide between allowing the case to progress henceforth in the name of a party who has not the least legal right to the claim; or requiring it to be prosecuted in the name of a party in whom the law has vested that legal right to every intent and in every particular.
If we allow the administratrix to remain on the record, and enter judgment in her favor, we thereby give her legal power to receive from the Treasury the amount of a judgment which does not belong to the estate of her intestate, but to the assignee in bankruptcy.
On the other hand, if we make the assignee the party, the money will go into the hands of one having a clear legal right to it, and into the control of the district court, in which, by law, that control is vested, and which has full power, not only over his administration of it, but over every question which may arise concerning its disposition.
Furthermore, if we do not make the assignee the party, there is no way to keep the fund in the district court, where, by law, it belongs. The bankruptcy law clearly intends that, from the moment one is adjudged a bankrupt; the administration of *370 bis estate shall belong, completely and uninterruptedly to the-end, in that court. There is not a word in the law indicating a purpose that that administration shall, under any circumstances, be interrupted, impeded, or shared by any State court. It is our duty to see that no proceeding of ours shall, in any degree, have the effect of embarrassing the jurisdiction of the district court, or afford .any State court any ground for interfering with an administration which does not belong to it.
When, therefore, we give the claimant’s place to the assignee,, we do not run counter to the Supreme Court’s expressed intention, but, on the contrary, carry it out by putting the matter in such shape that, in the legitimate forum, every right and every controversy may be considered and settled.
It matters not, as against the views we have expressed, that after Peck’s debts and all the bankruptcy expenses shall have been paid, there may be a surplus to which his administratrix would be entitled. That must depend on the outcome of the-bankruptcy administration and the final decree of the district court. Were it now made perfectly clear to us that nine-tenths of the judgment in this case would take that course, that would, afford no warrant for leaving her on the record as a claimant when she has no legal right to that position. If she has any claim to such a surplus, let her urge it in a tribunal having-power to give it effect; not here, where no such power exists.
' What we have to do in the exercise of our ordinary jurisdiction in this, as in every other case, is to ascertain the legal right as against the United States, and to see that no judgment be-rendered here against the government except upon the basis of that right. As the administratrix, in our judgment, has no sort of legal right to recover a judgment in this case, it is our-duty to displace her from the record; and as the assignee clearly has that right, it is equally our duty to place him on the record as claimant, so that he may legally prosecute the claim in his own name to its final issue, and recover the money to-which the law entitles him.
The motion of the assignee is sustained.