Sóoeield, J.,
delivered the opinion of the court:
This suit is brought to recover an unpaid balance of a judgment rendered in this court February 10, 1879, for $43,113.63, No. 11832, in favor of Campbell K. Peck, and reported in 14 C. Cls. R., 84. The amount now claimed to be due is a sum equal to the interest at the rate of 5 per centum upon said judgment from February 17, 1879, to July 12, 1880.
The facts found by the court may be abbreviated as follows :
February 17, 1879, a copy of the judgment, certified as required by section 1089 of the Revised Statutes, was presented by the claimant to the Secretary of the Treasury for payment. He was informed that judgments of the Court of Claims would not be paid until the ninety days allowed for appeals had elapsed.
April 7, 1879, the claimant appealed. The appeal was docketed in the Supreme Court as Campbell K. Peck, appellant, v. The United States, No. 798.
April 9, 1879, the defendants appealed. Their appeal was docketed as The United States, appellant, v. Campbell K. Peck, No. 788.
The cross-appeals afterwards came on to be heard, and the decision of the court thereon was announced March 22, 1880.
April 22, 1880, the following mandate from the Supreme Court was received by the Court of Claims, and judgment was entered by the latter court in accordance therewith :
“ It is now here ordered and adjudged by this court that the judgment of the said Court of Claims in this cause be, and the same is hereby, affirmed for the full amount of the award made to the claimant, and that an additional amount of $2,660 should be allowed for the two items of extra expense referred to in the opinion of this court.” .
May 10, 1880, upon motion to the court, John W. Hobbs, as-signee in bankruptcy of Campbell K. Peck, was substituted for the claimant. (15 C. Cls. R., 364.)
May 12, 1880, a duly certified.copy of this proceeding and of the judgment entered upon the mandate of the Supreme Court, amounting to $45,773.63, was furnished to the claimant, and July 12, 1880, the same was presented to the Secretary of the Treasury for payment.
July 13, 1880, a warrant was drawn in favor of the claimant *226 for $45,773.63, which, on the same day, was paid to and receipted by his attorneys.
The claim for interest is based upon the following section of the Revised Statutes:
“ Sec. 1090. In cases where the judgment appealed from is in favor of the claimant, and the same is affirmed by the Supreme Court, interest thereon at the rate of ñve per centum shall be allowed from the date of its presentation to the Secretary of the Treasury for payment as aforesaid, but no interest shall be allowed subsequent to the affirmance, unless presented for payment to the Secretary of the Treasury as aforesaid.”
All the requirements of this section are found in the above statement of facts. A judgment was rendered .by the Court of Claims in favor of the claimant; a copy .thereof duly authenticated was presented to the Secretary of the Treasury; the defendants appealed from the judgment, and the same was affirmed by the Supreme Court. By these facts the case is brought within the letter of the statute.
There would have been no question about interest had not an appeal been also taken by the claimant. This fact, it is claimed, takes the case out of the spirit and purpose of the statute. The government does not pay interest, it is argued, because it is supposed to pay its debts when due and payment is demanded. Unliquidated claims are not considered due until the liability of the government is authoritatively determined. After such determination, a claimant who voluntarily puts himself in a position from which he cannot legally demand payment is no more entitled to interest than the holder of a government bond who neglects to call for his money when it is due. Assuming this argument to be sound, the conclusion that the claimant must necessarily be deprived of interest because he took an appeal is based upon a misconception of the practice in the Supreme Court relative to appeals.
In the State courts, so far as we know, an appeal by either party brings up for review the whole case. Not so in the Supreme Court of the United States. There nothing is reviewed but the complaints of the appellant. The party not appealing is considered as content with the action of the court below. In the case of the United States v. Hickey (17 Wall., 9; 8 C. Cls. R., 114) the court says:
“ Much the greater part of the time consumed in the argument of this case was bestowed upon the two items which were *227 rejected by the Court of Claims. This was quite unnecessary. By not appealing the claimant has declared himself to be content with the disposition of the case by the Court of Claims. The appeal [of the United States] brings up only the claim allowed. The rejected items, therefore, will receive no consideration, except so far as it may be necessary for a proper understanding of the items allowed.”
According to this practice, the claimant’s judgment was not disturbed by his own appeal. His petition set forth five items of claim. The court below allowed two and rejected three of them. The purpose of his appeal was to reverse only that portion of the decision adverse to him. The judgment in his favor was put in issue only by the appeal of the defendants. In the Supreme Court the two appeals were separately docketed and given different numbers, and although only one mandate was sent to this court, it was in two distinct parts, applicable to the two appeals. On the appeal by the claimant an additional amount of $2,660 for two of the items rejected by this court was allowed, and on the defendants’ appeal the judgment below was affirmed. After considering and overruling several objections to the judgment, the opinion of the court concludes as follows:
“As to the remaining points involved in the case, it is only necessary to say that our judgment concurs with that of the Court of Claims except as to two items. We think that the claimant should have been allowed his extra expense in constructing new cabins and quarters for his men for cutting wood at a greater distance from the station, after having constructed sufficient quarters within the limits allowed by the terms of his contract. This extra expense was $1,300, and was caused by the order forbidding him to cut wood except at a distance of from two and a half to five miles from the station, whereas the contract allowed him to cut at any point outside of half a mile.
“ The other item referred to is the expense of keeping his teams unemployed for a space of ten days while waiting for the arrival of the post commander, after being forbidden to cut wood within the limits of the military reservation. He had reason to expect a modification of the order; and it was modified so as to allow him to cut on the reservation at the distance of from two and a half to five miles from the station. The amount of this expense is found to have been $1,360. This, we think, should have been allowed him.”
In this view of the case, the defendants and not the claimant were the cause of the delay.and the judgment'is thus brought within the spirit and purpose of the statute allowing interest, as well as within its letter.
*228 Another objection is interposed by the defendants. July 13, 1880, the claimant was paid $45,773.63, a sum just equal to the face of the final judgment. He demanded the whole sum due, including interest, but when he was informed that the appropriation was short, he took the amount given. Neither the Treasury warrant nor the receipt stated it to be in full. This action on the part of the claimant, it is said, amounted to a release of the balance due. We do not think so. Itistruethat it has been held in a certain class of cases that the payment of principal, as such, works a discharge of the interest. These cases, however, do not settle an arbitrary rule, whereby interest is in all cases released contrary to the agreement or intention of the parties. In Wait on “Actions and Defenses” (vol. 4, page 129) the rule is thus laid down: “An action will not lie to recover interest after the principal has been paid unless there was an express contract to pay interest.” In this case the defendants, by their own statute, agreed to pay interest, and there can be no better contract than that. We are not to presume that the law will sanction an evasion of its own honest provision through inequitable and technical rules of practice. In Lovett’s Case (94 U. S. R., 53) the Supreme Court said, “Payment by a debtor of a part of his debt is not a satisfaction of the whole, except it be made and accepted upon some new consideration.”
When payment of the principal is accepted and no account is made of interest, it may well be presumed that it was not the intention to exact it. But such presumption is open to rebuttal. To this end, all thé conversation and acts of the parties and of .the circumstances showing their intention ought to be considered. If a party makes a payment upon his note equal to its face and has ‘the same credited upon it, and then leave the note with the creditor, it would scarcely he held to release the accumulated interest. Such payments apply first upon the interest, and then upon the principal. There are no facts in this case tending to show an intention on the part of the claimant to release the interest which the defendants, by statutory provision, were required to pay. On the contrary, he demanded it. Nor was there any such requirement nor even request on the part of the Treasury officials. They gave him a good reason for not paying the whole amount then, and he accepted part of the claim because the whole would, at that time, exceed the *229 limits of the appropriation. A receipt, not in full, but for the amount paid, was offered and accepted.
As bearing upon the same question section 1092 of the Revised Statutes should also be considered. It is as follows:
“Sec. 1092. The payment of the amount due by any judgment of the Court of Claims and of any interest thereon allowed by law, as hereinbefore provided, shall be a full discharge to the United States of all claim and demand touching any of the matters involved in the controversy.”
Although this section only provides that the original claim shall be discharged by the payment of the judgment and interest, it also implies that the claim would not be discharged unless both judgment and interest were paid.
We therefore hold'that none of the amount due the claimant is forfeited because he accepted the only amount that the accounting officers, by reason of a meager appropriation, were at that time able to pay.
In the case of United States v. O’Grady (22 Wall., 641) it was held that this court has jurisdiction of a claim based upon an unpaid balance of a judgment already rendered.
Having determined that the claimant is entitled to recover interest upon his judgment, we come to inquire when the interest began and when it ceased. That it began to run February 17,1879, whén the certified copy of judgment was presented to the Secretary, can scarcely be doubted. That seems to be the plain provision of section 1090. When it ended is not so clear. The judgment upon the mandate was entered April 22, 1880, but a certified copy thereof was not presented to the Secretary until July 12,1880. The last lines of section 1090 provide that “no interest shall be allowed subsequent to the affirmance unless presented for payment to the Secretary of the Treasury as aforesaid.” This seems to require that a new copy of the judgment, showing what disposition of the case had been made in the Supreme Court, and certified, as required in section 1089, should be presented for payment to the Secretary, and if not so presented, interest should not be allowed after the date of affirmance.
What, then, within the meaning of the statute, was the date of affirmance?
The decision of the Supreme Court was announced March 22, 1880, but the mandate to the Court of Claims was not ordered *230 until a month later. Mandates are not, of right, demandable by the parties, but are issued at the discretion of the court, and, as a rule, not until the end of the term. Thus time is taken for the correction of possible errors by the court itself.
The statute requires the copy of the judgment to be certified by the Court of Claims. It is plain, therefore, that no action in the premises could have been taken before April 22,1880. We are of the opinion, therefore, that the claimant was entitled to interest down to that date and not after.
Interest upon the original judgment of $43,113.63 from February 17,1879, to April 22, 1880, would amount to $2,544.90, for which sum judgment will be entered in favor of the claimant.