Littleton, Judge,
delivered the opinion:
The defendant at the outset contends that this court has no jurisdiction to determine the issues of this case for the reason that plaintiff has failed to meet the requirements of section 180 of the Judicial Code, 36 Stat. 1141, under which one of its claims is made; that in bringing this suit in its own behalf, the plaintiff must allege and admit that it is or has been indebted to the United States as an officer or agent thereof or by virtue of a contract therewith, failing in which *238 it lias failed' to state a cause of action within the jurisdiction of this court.
There is no merit in this contention of the defendant. In the first place, the plaintiff has alleged and proved all the jurisdictional requirements of section 180 of the Judicial Code. That section provides as follows:
“ Whenever any person shall present his petition to the Court of Claims alleging that he is or has been indebted to the United States as an officer or agent thereof, or by virtue of any contract therewith, or that he is the guarantor, or surety, or personal representative of any officer or agent or contractor so indebted, or that he or the person for whom he is such surety, guarantor, or personal representative has held any office or agency under the United States, or entered into any contract therewith, under which it may be or has been claimed that an indebtedness to the United States had arisen and exists, and that he or the person he represents has applied to the proper department of the Government requesting that the account of such office, agency, or indebtedness may be adjusted and settled, and that three years have elapsed from the date of such application, and said account still remains unsettled and unadjusted, and that no suit upon the same has been brought by the United States, said court shall, due notice first being given to the head of said department and to the Attorney General of the United States, proceed to hear the parties and to ascertain the amount, if any, due the United States on said account. The Attorney General shall represent the United States at the hearing of said cause. The court may postpone the same from time to time whenever justice shall require. The judgment of said court or of the Supreme Court of the United States, to which an ■appeal shall lie, as in other cases, as to the amount due, shall be binding and conclusive upon the parties. The payment of such amount so found due by the court shall discharge .such obligation. An action shall accrue to the United States .against such principal, or surety, or representative to recover the amount so found due, which may be brought at any time within three years after the final judgment of said court; and unless suit shall be brought within said time, such claim and the claim on the original indebtedness shall be forever barred. The provisions of section one hundred and sixty-six shall apply to cases under this section.”
'So far as this case is concerned, the section requires that the plaintiff “ present his petition to the Court of Claims alleging that he * * * has entered into any contract *239 therewith [United States], under which it may be or has been claimed that an indebtedness to the United States had arisen and exists,” etc., and that this “ court shall, due notice first being given * * * proceed to hear the parties and to ascertain the amount, if any, due the United States * * # 5J
The plain language of the section grants to an officer, agent, or a contractor, or the guarantor, surety, or personal representative of such officer, agent, or contractor the right to come into this court and have the claim of the United States that he is indebted to. it determined; first, in a case where such person may admit an indebtedness which has not been settled or adjusted for any reason; secondly, in a case where such person may admit in part or deny in part an indebtedness claimed by the United States against him which has not been settled, adjusted, or suit brought by the United States; and, thirdly, in a case where such person denies entirely an indebtedness claimed by the United States against him which has not been adjusted and settled and no suit brought by the Government. The provision that if such person “ has held any office or agency under the United States, or entered into any contract therewith, under which it may be or has been claimed that an indebtedness to the United States had arisen and exists ” clearly has reference to an indebtedness claimed by the United States and not by the person bringing the suit, although, as pointed out above, in order to have the matter finally determined, the plaintiff may admit all or a portion of such claimed indebtedness. The rights granted by this section and the jurisdiction conferred thereby are in addition to the rights given and the jurisdiction conferred by section 145 of the Judicial Code. The intention of the act was to provide for the speedy disposition of claims by the United States against its officers and agents, and against those having contracts with it, by giving to such persons the right to come into this court and compel the United States to answer and have its claim determined. Prior to 1887, when section 180 was enacted, such questions could only be settled and determined in the absence of a settlement by the parties in suit brought by the United States against such officer, agent, or contractor, *240 or a surety, guarantor, or personal representative thereof' in the district courts of the United States which had exclusive jurisdiction of such questions. The person against' whom the United States claimed an indebtedness could therefore do nothing but wait until the United States might-decide to act in the matter. Due to the fact that the statute-of limitation does not run against the United States, it was-, recognized that such delay might seriously prejudice the-person claimed by the United States to be indebted to it,, in the defense of a suit brought many years after the alleged claim of indebtedness had arisen. Furthermore, it: was intended by this section to give the claimed debtor an opportunity to have his indebtedness to the United States,, or the claim of the United States that he might be so indebted, judicially determined and to relieve him from further liability in questions where the matter had not-already been adjusted and settled.
The defendant next contends that the claimed indebtedness, of the plaintiff to the United States was adjusted and settled within the meaning of section 180 when the Comptroller General of the United States applied amounts standing to the credit of the plaintiff on the books of the United-States against an amount believed by the Comptroller General to be the amount of damages for which it was claimed'; the plaintiff was liable to the defendant. There is no merit in this contention. The action of the Comptroller General did not even constitute a prima facie case in favor of the-defendant, either on the questions of law or of fact. In any event, in this case, the plaintiff, as hereinafter set forth in more detail, has clearly overcome by competent proof any - claim by the defendant of the existence of any indebtedness by the plaintiff under the contract of June 26, 1916. We need not here decide the meaning of the words “ adjusted and settled ” used in section 180, for it is well settled that. disputed claims for damages for breach of contract can in. no sense be called an account, and are not committed by law to the control and decision of the accounting officers of the United States. The reason is plain. Such claims must be sustained by extraneous proof and often involve a broad; field of investigation requiring the determination of difficult: *241 legal questions and application of judgment and discretion; upon the measurement of damages and the weight of conflicting evidence. Wm. Cramp & Sons v. United States, 216, U. S. 495. Certificates of the Comptroller General are admissible in evidence to show what the Comptroller General; did, but, when the correctness of his decision is called into, question, such certificates do not prove as a fact that plaintiff was indebted to the United States under the contract of June 26, 1916, and, as a matter of law, they do not constitute-an adjustment and settlement of the alleged indebtedness of the plaintiff within the meaning of section 180 of the Judicial Code. Mohawk Condensed Milk Co. v. United States,. vol. 1, 1930 P. H. Fed. Tax Service, Para. 1882.
The defendant further contends that this court may only determine the amount of indebtedness due the United States under the contract of June 26, 1916; that since plaintiff has.invoked the provision of section 180 of the Judicial Code this court is without jurisdiction or authority to consider another issue or to render judgment against the-United States on any affirmative claim made by the plaintiff in the same suit. In support of this contention defendant relies upon Victoria Gerding, Administratrix, v. United States, 26 C. Cls. 319 and 28 C. Cls. 531. Some of the-language in that opinion went beyond the necessities of the case, but it is unnecessary for us to discuss the facts in. that case since it appears from the opinions that “ the allegations of the petition do not, by express averment, allege an indebtedness to the claimant,” and it was only in argument that it was insisted that the defendant was indebted to the plaintiff. In the Gerding case the court did not fully discuss the provisions of section 180 and, for the reasons hereinafter set forth, we think there is no merit in this claim of the defendant. In our opinion it was never intended by-section 180 to take away from the plaintiff any of the rights, to sue the United States under other provisions of the law and there is nothing in the section which precludes the plaintiff from setting up, by appropriate allegations in a petition which invokes the provisions of section 180, a claim or claims against the United States for affirmative relief under- *242 section 145 of the Judicial Code. The petition in this case, in separately numbered paragraphs, contains appropriate allegations with reference to amounts due the plaintiff under other contracts fully performed under a judgment entered by this court, in its favor, under an act of Congress appropriating money in its favor, and under the contract of June 26, 1916; that it is the owner of said claims and that no assignments thereof have been made, and prays that the defendant be required to answer this petition and to present to this court for adjudication and determination its alleged claim against said plaintiff (under section 180) and that plaintiff have judgment against the defendant for the sum of $50,176.78 with interest. The case is, therefore, based upon three classes of jurisdiction, first, monies admittedly due the plaintiff from the defendant aggregating $50,176.78 composed of sums due on a judgment of this court upon two certain contracts for dredging, under a private act of Congress and under the contract of June 26, 1916; secondly, for interest due on the items comprising said aggregate under the act of March 3, 1875; and, thirdly, upon allegations in a petition, under section 287, Tit. 28, U. S. Code, formerly section 180 of the Judicial Code, which authorizes this court upon the presentation of a petition making certain allegations to ascertain the amount, if any, due the United States from a contractor with the United States. There is nothing in the provision of section 180 of the Judicial Code which limits the right of this court upon proper allegations to consider and decide and to render judgment for affirmative relief under its general jurisdication in a case in which the plaintiff also invokes the provisions of section 180. The section merely requires that the plaintiff shall set forth in his petition certain allegations. It does not limit claims made to those arising under this section. It does not prescribe a rule of pleading or practice beyond the allegations of the necessary jurisdictional facts. The section is an enlargement rather than a limitation of the jurisdiction conferred by section 145 of the Judicial Code, and we see no reason for holding that the court may not upon proper allegations consider questions arising under both of *243 these sections in the same suit and determine the amount, if any, due the United States by the plaintiff and the amount, if any, due the plaintiff by the United States. In this way a multiplicity of suits is prevented and the rights and liabilities of the parties are speedily and finally determined.
The defendant admits that the amount of $50,116.18 is due the plaintiff. There can be no question under the facts about this.
On the question of interest this court has jurisdiction of a suit to recover interest on an unpaid balance of judgments against the United States, whether rendered by this or another court. United States v. O’Grady, 22 Wall. 641; Hobbs v. United States, 19 C. Cls. 220; Carroll v. United States, 31 C. Cls. 314; Bloodgood v. United States, 39 C. Cls. 69. See also United States v. La Grange Grocery Co., 31 Fed. (2d) 297; United States v. N. Y., C. & St. L. R. Co., 32 Fed. (2d) 887. This question will be further discussed following our decision on the question of the indebtedness claimed by the defendant against the plaintiff under the contract of June 26, 1916.
The nest question, and the one about which there is the most serious controversy, is whether there exists an indebtedness of the plaintiff to the United States under the contract of June 26, 1916, relating to certain dredging in Honolulu Harbor. The facts have been fully stated and we need not repeat them in detail here.
The defendant insists that the plaintiff breached the contract in failing to make satisfactory progress with the work; that the defendant had the right to relet the contract for the work and to annul the plaintiff’s contract, and to hold the plaintiff for the cost of doing the work in excess of that provided in the plaintiff’s contract of June 26,1916.
On the other hand, the plaintiff contends, first, that it did not breach or abandon its contract but that the defendant breached the contract and excluded plaintiff from the work; that nothing is due the defendant under the contract of June 26, 1916; that under plaintiff’s other claims judgment should be rendered in its favor for the amount of $50,176.78, with interest under the act of March 3, 1875; secondly, that *244 the contract of October 29, 1917, between defendant and tbe Hawaiian Dredging Company was not within defendant’s powers under article 3 of its contract with plaintiff and constituted a breach by defendant of the contract of June 26, 1916; that any steps taken under article 3 of plaintiff’s contract required the independent judgment of the contracting officer, and the step could be taken only to insure completion of the work; that the first Hawaiian Dredging Company contract was made solely by direction of the Chief of Engineers and the contracting officer exercised no independent judgment; that this contract was made solely for the purpose of permitting reconstruction of the quarantine wharf and not for the purpose of putting the work of dredging under the plaintiff’s contract in a proper state of advancement or to insure its completion within the contract period; that article 3 of the contract of June 26, 1916, did not authorize defendant to take any part of the work out of plaintiff’s hands but gave authority only to render assistance of certain kinds when determined necessary by the contracting officer; that defendant did not furnish plaintiff any of the assistance empowered under article 3 of its contract, but, on the contrary, it took an important part of the work out of plaintiff’s hands; that the taking of the work of dredging in area H out of plaintiff’s hands constituted a breach of plaintiff’s contract; that the letting of the first Hawaiian Dredging Company contract constituted a breach of plaintiff’s contract on the further ground that it doubled the rate of progress required by plaintiff; that the requirements of article 3 of plaintiff’s contract and of the statutes with reference to the letter of the contract by the War Department were not followed in the first Hawaiian Dredging Company contract of October 29, 1917; thirdly, that defendant, on March 8, 1918, annulled plaintiff’s contract, thereby terminating the same and defendant had no right of action thereunder; that defendant did not proceed in accordance with the requirements- of section 4 of the contract; that the annulment of the contract on March 8, 1918, was the action of the Chief of Engineers and not of the contracting officer, and was therefore unauthorized; *245 that defendant did not proceed forthwith, to secure performance of the work; fourthly, that the work specified in plaintiff’s contract was substantially different from and less than that to be done under the two contracts of October 29, 1917, and October 1, 1919; that prices of material and labor greatly increased before the second contract of October 1, 1919; that both of those contracts were let at excessive prices, and for these reasons the prices agreed to be paid thereunder are not a proper measure of damages against the plaintiff; that the material to be dredged under the contract let to the Hawaiian Dredging Company was greater than that which it would have been necessary to dredge under a contract let forthwith because a large amount of material had silted into Honolulu Harbor by October 1, 1919; that the cost of work under the two contracts of October 29, 1917, and October 1, 1919, was greater than would have been the cost of the same work under a single contract made forthwith; that labor and material costs were constantly increasing; that the cost of dredging under the two contracts was greater than it would have been under one; that there was additional cost due to operations of drilling and blasting; that the narrow cut at the wharf added to the cost and the shifting of the site was a material modification of plaintiff’s contract for the work; that the specifications of the two contracts let after the work had been taken out of plaintiff’s hands materially differed in other important respects.
We are of opinion that the defendant breached the contract of June 26, 1916, with plaintiff and that there is nothing due the United States because of the payment by it to another dredging company under the two contracts of October 29, 1917, and October 1, 1919, of an amount in excess of the price at which the plaintiff had contracted to do the dredging specified in its contract. Article 3 of the contract provided that the contractor should commence the work within sixty days after approval of the contract by the Chief of Engineers and should prosecute the work at a rate sufficient in the opinion of the contracting officer to secure completion within the contract time; and that if the contractor *246 should fail to make such progress the contracting officer should have power to employ such additional plant or labor, purchase such material, and liquidate such obligations of the contractor “ as the contracting officer may deem necessary ” to put the work in a proper state of advancement or to insure its completion within the contract time. The defendant violated the requirements of the provision.
The local district engineer at Honolulu, who was the contracting officer, was on the ground and entirely familiar with all the facts and circumstances concerning the operations under the contract of June 26, 1916. The plaintiff was actually engaged upon the work under its contract and although it did not, up until the work was relet on October 29,1917, have a dredge on the work it had certain dredging equipment necessary to the drilling and blasting required in the area to be dredged. The contract of October 29, 1917, was made solely by direction of the Chief of Engineers. The contracting officer exercised no judgment whatever but merely executed the decision of his superior as his position compelled him to do. The contracting officer never decided that it was necessary to take any action in order to put the work in a proper state of advancement or to insure completion of the contract within the period specified. On the contrary, he did not at any time deem such action necessary and the contract was let by direction of the Chief of Engineers solely for the purpose of enabling construction of the quarantine wharf. It is worthy of note that the defendant did not call as a witness any one of the contracting officers on whom article 8 of the contract imposed the duty of deciding whether the contractor was making such progress as would insure completion of the work within the contract time, and who, under article 4 of the contract, was required to decide in the first instance whether the contractor was diligently and faithfully prosecuting the work and to secure the sanction of the Chief of Engineers before the contract could be annulled. The plaintiff has affirmatively established, however, that the contracting officer took none of the steps and made none of the decisions required of him under articles 8 and 4 of the contract, and that he never decided that the plaintiff was not *247 making satisfactory progress or that it was necessary to render assistance or employ additional plant or labor, or to do any of the things provided in article 3, nor that the contracting officer decided that the contractor had delayed in commencing the work or had failed to prosecute faithfully and diligently the work under the contract. The plaintiff was entitled to the judgment of the district engineer and contracting officer and since the work specified in the contract was taken out of plaintiff’s hands and the plaintiff was excluded from the area to be dredged solely by direction of the Chief of Engineers, and since the contract was annulled by the Chief of Engineers without recommendation or decision as to any of the matters specified in article 4 by the district engineer and contracting officer, the defendant breached the contract and can not hold the plaintiff liable for any excess cost to it in the performance of the work.
The defendant attempts to justify the action taken on the ground that the contracting officer did act in the matter, and it is immaterial that he acted solely under instructions from the Chief of Engineers of the War Department, at Washington, D. C. This was not enough. The contract was annulled by the Chief of Engineers. In King v. United States, 37 C. Cls. 428, 436, the contract had been annulled by the Chief of Engineers, the court said:
“ The contract called for "the judgment of the engineer in charge,’ and gave him alone ‘ power, with the sanction of the Chief of Engineers, to annul the contract by giving notice in writing to the party of the second part.’ The Chief of Engineers and the Secretary of War, and the assistant who signed the notice, were not the persons named in the contract. The contractor was entitled to the judgment of the engineer in charge, with the sanction of the Chief of Engineers, and was entitled to ‘notice in writing to that effect from the engineer in charge.’ ”
In Williams Engineering & Contracting Co. v. United States, 55 C. Cls. 349, the court held that where a contract provides that the Chief of the Bureau of Yards and Docks may, upon the report of the engineer in charge that the work can not be completed within the contract time, annul the same, the Secretary of the Navy, during the temporary absence of the Chief of the Bureau of Yards and Docks, *248 has no authority to annul the contract. In Burton Coal Co. v. United States, 60 C. Cls. 294, 313, affirmed 273 U. S. 337, this court said: “ The stipulation respecting it [cancellation] required the independent opinion of the Quartermaster General as to the public interest, and 15 days’ notice of intent to exercise the right. * * * The cancellation clause involved herein expressly gave to the plaintiff the right to have the opinion of the Quartermaster General, and conferred upon this officer a discretion, after a review of the situation, to either cancel or withhold cancellation of the contract. The contracting officer was to give 15 days’ notice, a mere ministerial act, thus emphasizing the mutual understanding of the parties that one designated official was to act in a judicial capacity and the other carry forward his determination. We need not multiply citations to the effect that where one is vested with discretion to do or not to do a certain thing, he alone must act.” See, also, Bondurant Construction Co. v. United States, 61 C. Cls. 593, in which this court held that where the Chief of Engineers sanctions the annulment of a contract on grossly erroneous information the contractor is entitled to recover. It is of no avail to the defendant now to claim that the plaintiff did not commence actual dredging operations within the time specified in the contract which was due to its inability to secure means of transportation of its dredges to Honolulu. It was for the contracting officer who was on the ground and familiar with the conditions to decide whether the plaintiff should be given assistance in bringing the work to a proper state of advancement or whfether the contractor had so failed faithfully and diligently to prosecute the work as to justify annulment of the contract. He made no such decision independently as the contract required. The Chief of Engineers had no authority to take any action whatsoever under the contract other than to sanction the opinion of the contracting officer that the contract should be annulled. He had no authority arbitrarily to instruct the contracting officer what to do under articles 3 and 4, or what decision he should come to thereunder. The contracting officer never decided that the contract should be annulled and the Chief of Engineers had no authority to direct him to cancel it.
*249 For the foregoing reasons and on authority of prior decisions of this court upon similar questions, the plaintiff is not liable to the United States for any amount under the said contract of June 26, 1916, and there is nothing due the-United States from the plaintiff with respect thereto. It is unnecessary, therefore, to consider the other contentions advanced by the plaintiff in support of its claim that it is-not indebted to the defendant.
With respect to the right of the plaintiff to recover interest on the several amounts withheld by the defendant and finally applied by the Comptroller General of the United States as a credit against the alleged indebtedness of the plaintiff, the defendant contends, with respect to the two items of $10,000 each and the item of $4.35, that it has not been shown that these items were ever allowed by legal authority as required by the act of March 3, 1875, and that there is no proof that the items upon which interest is claimed were ever presented to the Secretary of the Treasury. The facts and decided cases disposed of these questions contrary to the contentions of the defendant. See section 305 amending section 236 of the Revised Statutes and section 307 of the Budget and Accounting Act of 1921, 42 Stat. 20, 24, 25; United States v. La Grange Grocery Co., 31 Fed. (2d) 297; United States v. New York, C. & St. L. R. Co., 32 Fed. (2d) 887; James Stewart & Co., Inc., v. United States, No. H-340, decided by this court November 3, 1930. [Ante, p. 126.] In United States v. La Grange Grocery Go. supra, the court said:
_ “ When the act of 1875, now section 227, was passed, section 71 appeared in the Revised Statutes of 1873 as section 236, except that the adjustment and settlement was to be done in the Treasury Department. The machinery of settlement then consisted of a Comptroller of the Treasury, with his assistant and six auditors. * * * In 'order that interest should follow an improper offset, it was unnecessary to present the demand for payment to the Secretary of the Treasury in person, as it was unnecessary that he, in person, should make the offset. The Comptroller and the Auditor made the offsets, and a presentation in the Treasury Department for adjustment and payment was all that was meant by the words: 1 When :i: * * any claim * * * shall be presented to the Secretary of *250 the Treasury for payment.’ The purpose of the act was not to involve the Secretary personally, but to raise a duty in his department to offset counterclaims, and to fix the fair consequences in the matter of interest.”
Section 305 of the budget act of 1921, 42 Stat. 24, 25, amending section 236 of the Revised Statutes, provides that “All claims and demands whatever by the Government of the United States or against it, and all accounts whatever in which the Government of the United States is concerned, either as debtor or creditor, shall be settled and adjusted in the General Accounting Office,” and section 307 of said budget act of 1921 provides that “ The Comptroller General may provide for the payment of accounts or claims adjusted and settled in the General Accounting Office, through disbursing officers of the several departments and establishments, instead of by warrant.” Under existing law, therefore, the Comptroller General, and not the Secretary of the Treasury, is the directing agency as to when and by whom any claims against the United States shall be paid. His act in withholding payment was equivalent to such action by the Secretary of the Treasury. A claim presented to the Comptroller General, upon allowance by him, became a valid claim presented to the Secretary of the Treasury within the meaning of the act of March 3, 1875, providing for the payment of interest. This point was fully discussed and we think correctly decided by the court in United States v. La Grange Grocery Co. supra. Plaintiff is, therefore, entitled to recover $50,176.78 with interest.
On the question of claimed indebtedness of plaintiff to the United States under the contract of June 26, 1916, the court determines that nothing is due the United States in respect thereto and, further, it is the judgment of the court that plaintiff is entitled to recover from the defendant $50,176.78 with interest on $27,151.71 from October 5, 1918; on $10,000 from September 27, 1920; on $10,000 from February 13, 1923; on $3,020.72 from February 26, 1923.; and on $435 from August 21, 1920. It is so ordered.
Williams, Judge; Green, Judge; and Booth, Chief Justice, concur.
Whaley, Judge, did not hear this case and took no part in its decision.