## BRIGGS & TURIVAS, Inc., v. UNITED STATES.

### No. K–50.

Court of Claims.
Nov. 2, 1931.

plaintiff on June 15, 1919, paid to the collector of internal revenue for the First collection district of Illinois $15,408.09 income and profits taxes for 1918. On February 8, 1924, the plaintiff paid to the same collector $57,355.68 additional income and profits taxes assessed against it for the year 1918. Thereafter on February 11, 1924, plaintiff filed with the collector a claim for refund and credit of its income and profits taxes theretofore paid by it for the year 1918.

The Commissioner of Internal Revenue, acting upon said refund claim, determined an overassessment of plaintiff's income and profits taxes for 1918, signing a schedule to that effect September 7, 1926, by the terms of which a refund of $6,488.39 and interest thereon was authorized. On April 19, 1927, the Comptroller General tendered plaintiff in payment of said refund claim a check for $3,466.85, stating in writing that plaintiff's acceptance of the check must be in full satisfaction of the amount due the plaintiff upon its allowed refund claim. The plaintiff did not accept and has not accepted said check as payment in full of the sum due it; nor has it ever indorsed or cashed the same, but, on the contrary, sues herein to recover the amount alleged to be due under the admitted facts in the case.

The Comptroller General deducted from the amount due plaintiff an alleged indebtedness of plaintiff to the War Department upon another and independent transaction of the plaintiff with the department. Thereafter plaintiff conceded an indebtedness to the government of $976.24, which amount is admitted as a proper counterclaim.

■■ The issue in this suit is the question of interest and the effect of the mailing by the comptroller of the check for $3,466.85. The defendant insists that inasmuch as the plaintiff still retains said check it should be treated as a partial payment upon the government's indebtedness and thereby reduce the interest allowable under the law. The plaintiff is, we think, entitled to the sum of $6,488.39 with interest at 6 per cent. thereon from June 15, 1919, to September 7, 1926, the date when the commissioner signed the schedule of over-assessment. The plaintiff could not accept the check tendered it by the comptroller without losing its right to sue for and recover the balance due it at that time. Obviously there existed mutual accounts between plaintiff and defendant on April 19, 1927. The government's indebtedness to the plaintiff was liquidated, but the plaintiff's indebtedness to the government as to amount

E. C. Lake, of Washington, D. C., (Albert L. Hopkins, of Washington, D. C., Harry B. Sutter and Donald J. De Wolfe, both of Chicago, Ill., and Anderson A. Owen, and Hopkins, Starr & Hopkins, of Washington, D. C., on the brief), for plaintiff.

Heber H. Rice, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (George H. Foster, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

BOOTH, Chief Justice.

The plaintiff, an Illinois corporation, sues to recover an allowed overpayment of its income and profits taxes for the year 1918. The facts, not in dispute, disclose that the

due was unliquidated and a matter of dispute; therefore, if the plaintiff had accepted the check under the terms and conditions stated, it would, it seems to us, have constituted an accord and satisfaction. Shipman v. United States, 18 Ct. Cl. 138; De Arnaud v. United States, 151 U. S. 483, 14 S. Ct. 374, 38 L. Ed. 244.

The defendant may not discharge an indebtedness to the plaintiff by mailing or tendering a check for a sum much less than is admittedly due and imposing obligations upon acceptance thereof which foreclose the plaintiff from thereafter asserting its lawful claim. Davidge v. Simmons, 49 App. D. C. 398, 266 F. 1018.

The defendant now admits that the check tendered the plaintiff was not sufficient in amount to discharge its indebtedness to the plaintiff, and it is clear from conceded facts that the tender made was for the express purpose of paying the indebtedness in full, so that there was nothing the plaintiff could do under the circumstances but what it did do, i. e., sue the defendant for the amount of its claim and tender the check to the defendant. It is urged by the defendant that the plaintiff was obligated to return the check, and that by holding the same an unreasonable time imposed a monetary loss upon the government. Just how the government loses by the transaction is difficult to see. What was done by the defendant was fraught with possibilities of substantial loss to the plaintiff. In an ex parte proceeding the plaintiff is informed that it owes the defendant $3,021.54, and an admitted balance due it of $3,466.85 will not be paid until a complete release is executed for all sums due from the government to the plaintiff. Assuredly no payment has been made to the plaintiff, no funds of the government have been applied in payment, and there is nothing in the record disclosing how or by what process the government ascertained in the first instance how much the plaintiff owed or whether interest lawfully due the plaintiff was or was not considered. All we have is an admitted indebtedness to the plaintiff and an assertion that interest due the plaintiff should be substantially diminished because the plaintiff did not cash or return a check which clearly it could not do and thereafter maintain this suit. The plaintiff at no time misled the government into believing that a partial payment had been made to it. The defendant knew the check had not been accepted under the conditions accompanying its tender, and in the face of an admitted indebtedness the plaintiff was compelled to sue to recover. Plaintiff filed its suit well within the statute of limitations after proceedings to determine the amount of the government's counterclaim, which, of course, must be a set-off against its demand. The plaintiff, when the check was mailed, contested liability to the government as claimed by the comptroller, and subsequent facts negative any such liability as claimed. The retention of the check did not affect the status quo, for it was in no sense intended as a partial payment, and could not have been cashed and given that effect. The plaintiff, we think, by commencing this suit as it did, is not to be held as retaining the check for an unreasonable time, for it did positively indicate its intention to refuse to accept it by proceeding as it did.

A judgment will be awarded the plaintiff as follows: $9,302.13, less the defendant's counterclaim of $976.24, a balance of $8,325.89, together with interest on $5,512.15, a part thereof, at the rate of 6 per cent. per annum from April 19, 1927, to date of payment. Stewart & Co. v. United States, 71 Ct. Cl. 126. It is so ordered, and that the check tendered be returned to the defendant.