## HELVETIA MILK CONDENSING CO., Inc., v. UNITED STATES.

### No. F–203.

Court of Claims.

March 7, 1932.

This suit is for the recovery of $11,133.-54, representing the amount of interest duly computed and allowed by the Commissioner of Internal Revenue under the revenue law on a net overpayment of $91,516.18, corporation excise and income and profits taxes for the period 1909 to 1917, inclusive. This overpayment was credited to an unpaid tax due December 15, 1920. The aforementioned interest was computed, allowed, and certified by the Commissioner of Internal Revenue for payment August 24, 1925. The Comptroller General withheld payment and applied the amount as a partial set-off against an alleged indebtedness of plaintiff of $15,564.56, principal and interest, for an overpayment claimed to have been made by the United States to plaintiff for evaporated milk.

Plaintiff claims this offset was erroneous in that it was not indebted to the United States in any amount, and it further claims interest on $11,133.54 under the Act of

March 3, 1875, from the date on which payment of the amount was withheld.

The defendant filed a counterclaim for $11,117.56, with interest from January 1, 1919.

The question therefore is whether plaintiff is indebted to the United States, and, if not, whether it is entitled to interest on the amount of $11,133.54 from the date on which payment thereof was withheld by the Comptroller General.

Special findings of fact:

1. The plaintiff, an Illinois corporation, is and was during 1917 and 1918 engaged in the manufacture and sale of evaporated milk, with principal office at Highland, Ill. It duly-filed claims for refund and credit of corporation excise and income and profits tax alleged to have been erroneously collected for the years 1909 to 1917, inclusive.

2. In October, 1924, the Commissioner of Internal Revenue determined a net overpayment of $91,516.18 for this period, allowed the claims in that amount, and credited the entire net overpayment to the tax due and unpaid on December 15, 1920, for a different taxable period. August 24, 1925, the Commissioner computed and allowed interest of $11,133.54 upon the overpayment allowed and credited, and certified the same for payment. The correctness of this amount is not in question. The Comptroller General withheld payment and applied the amount due plaintiff as a partial set-off against $15,564.56, principal and interest alleged to be due by plaintiff to the United States on account of claimed overpayments by the United States for 34,676 cases of evaporated milk furnished during the months of November and December, 1917.

3. September 7, 1917, the United States Food Administration invited the manufacturers of milk to hold a conference with a view to making suggestions as to fixing prices during the war, and a conference of the manufacturers of evaporated and condensed milk was held at Washington, September 26, 1917. At this conference plaintiff was present. On a roll call vote taken, the manufacturers were unanimously in favor of voluntary regulation.

It was moved that 30 cents per case on evaporated milk and 40 cents per case on condensed milk would be a fair and reasonable profit to recommend to the Food Administration, and by a standing vote the industries represented at the meeting unanimously recommended these figures.

A circular, No. 272, United States Food Administration, Public Information Division, states in part, as follows:

"Manufacturers of canned milk representing ninety-five per cent of the entire industry in the United States, in conference with the United States Food Administration, to-day agreed voluntarily and unanimously to submit their business to the supervision of the Food Administration during the period of the war, and to take no war profits but to make the profit on their goods sold to the public the same as on goods to the Army and Navy.

"Since the first of May they have been furnishing supplies to the Army and Navy at a price and on a basis of profit determined by the Federal Trade Commission. This they obligated themselves in their conferences to-day to continue throughout the war, and further, they agreed to supply the commission for relief in Belgium and the American Red Cross at the same prices as that made to the Government.

"The canned-milk men expressed their willingness to cooperate with the Food Administration by limiting the price to the public so as not to return to the industry a greater profit than was received before the war. During that period, they declared, a profit of 30¢ a case on evaported milk, and 40¢ a case on condensed milk was considered fair. In meeting the greatly increased demand on account of needs created by the war, the manufacturers said they had found difficulties in the increased price of fresh milk and the high cost of tin plate. These have forced the increased prices for their product during the last 18 months. The only way in which they as manufacturers can limit the cost of their commodity to the public, they declared, is through the limitation of profits, since they can not control the cost of the raw materials upon which they depend."

4. The negotiations and conferences between the committee of milk manufacturers and the government were with the Food Purchase Board, created by executive order, which Board was composed of a representative of the Army, one from the Navy, one from the Federal Trade Commission, and one from the Food Administration, and one from the Marine Corps to co-ordinate the purchases of armed forces and others, to ascertain the available supplies of the respective commodities, to determine if the demand exceeded the supply, to take under control such commodities as were not already covered by the Food Administration Act, to allocate such

control of commodities, and to recommend to the respective heads of the departments methods of purchase and the prices to be paid. As a result of the conferences between the milk manufacturers' war committee, of which the plaintiff was a member, and the Food Purchase Board between September 7 and November 1, 1917, it was agreed that the manufacturers of evaporated milk would furnish milk upon orders from the various military establishments, after consideration by the Food Purchase Board of the prices to be paid from time to time for a period of fourteen months from November 1, 1917, to December 31, 1918. It was further agreed and understood that at the end of that period the profit per case on sales made to the Government by each milk company should be calculated on the basis of the Federal Trade Commission cost accounting, as set forth in a pamphlet issued by the Federal Trade Commission in July, 1917, entitled "Uniform Contracts for Cost Accounting, Definitions, and Method," and that each manufacturer would be allowed an average profit during the said period of fourteen months of 42 cents per case on evaporated milk and 59 cents per case on condensed milk calculated on the total number of cases furnished to the various military establishments. It was further agreed and understood by the representatives of the government and the milk manufacturers that, if in the event any manufacturer had made during the fourteen months' period an average profit on the total number of cases of milk furnished of more than 42 or 59 cents per case, the excess of such margin of profit would be refunded by the respective manufacturers to the Army, Navy, or Marine Corps, respectively.

5. December 2, 1918, the milk manufacturers war committee, of which plaintiff was a member, wrote the Food Purchase Board of the United States Food Administration in part, as follows:

" * * * In view of the fact that the entire agreement between the milk manufacturers war committee and the Army, Navy, and Marine Corps has not heretofore been reduced to writing in a single document, the committee sets forth the following as its understanding of the agreement, as it has existed in the past, and as it shall continue for the above designated period, with the exception of two slight modifications which will be noted hereafter.

" 1. It is the understanding of the committee that the Army, Navy, and Marine Corps shall purchase their requirements as nearly as may be from month to month, proper allowance being made for such reserves as it may be necessary to carry regularly against future needs. * * *

"3. The Army, Navy, and Marine Corps shall place their requisitions with the division of coordination of purchase of the Food Administration each month at such time as to enable this division to make the allotments to the several manufacturers, and to notify such manufacturers of the allotments on or before the 20th day of the month of prompt shipment. The division of coordination of purchase shall allot the supplies so requisitioned to the several manufacturers in proportion to the respective pack of each manufacturer, and the Army, Navy, and Marine Corps shall place their orders with the respective manufacturers for the amounts allotted to each by the division of coordination of purchase. Orders shall be placed after the 20th of the month only for shipment in a subsequent month, and such orders shall take the price determined for the month in which shipment is designated to be made. This provision eliminates the emergency orders which have heretofore been provided for.

"4. Complete shipping instructions shall be given to each manufacturer on orders placed with him within twenty-five days from the date on which the allotment is made to the said manufacturer by the division of coordination of purchase. (The twenty-five day period is substituted for the twenty-day period heretofore prevailing). Provided, however, that on orders placed after the 20th of the month for shipment in a subsequent month shipping instructions shall be given within twenty-five days of the first day of such month. Failure on the part of the Army, Navy, or Marine Corps to give shipping instructions within the time herein specified, shall entitle the manufacturer, at his option, to cancel the allotment or to bill the goods to the Army, Navy, or Marine Corps at the price prevailing in the subsequent month in which shipping instructions are finally given, provided, however, that failure to give shipping instructions within the time provided shall not entitle the Army, Navy, or Marine Corps to claim a subsequent month's price where such price is lower than the price prevailing in the month for which requisition is made.

"5. The price which the Army, Navy, and Marine Corps shall pay for milk purchased in respective months shall be determined as follows:

"The milk manufacturers war committee

shall, on or about the first of each month, certify to the Food Purchase Board the then prevailing market price per case, to the domestic population, of evaporated milk, consisting of forty-eight one-pound cans, and the then prevailing market price of condensed milk, consisting of forty-eight fourteen-ounce cans.

"From this market price there shall be deducted 25¢ per case on evaporated milk as a freight allowance on account of purchases made "f. o. b." plants, and 22¢ per case on sweetened condensed milk, so long as present existing freight rates prevail.

"Except for the period of October, November, and December, 1918, the price has been determined on the basis of two districts:

"District 1, including all of the United States, except Oregon, Washington, and California.

"District No. 2, including these States.

"It was the understanding of the committee that the differentials in price for these districts have been waived from month to month for the three months just named, but not abandoned, as a matter of principle.

"Whenever prices are made for the separate districts the freight adjustments shall be made on the basis of a deduction of 13¢ per case on evaporated milk for district No. 2.

"In addition to the above-mentioned freight deductions, the Army, Navy, and Marine Corps shall be entitled to a further deduction of 5¢ per case from the market price which was originally made as an allowance on account of presumed saving to the manufacturer in selling expense.

"The Army, Navy, and Marine Corps shall be entitled to a discount of 2% on all invoices for which payment is made within eight days from receipt by the buyer of invoices correctly drawn, in accordance with the provisions of the contracts, and accompanied by papers prescribed in the contracts, or from the dates of receipt by the buyer of the signed contracts, if said signed contracts are not received prior to receipt of invoices. The price determined as above is the net price f. o. b. manufacturer's plant for milk packed in regular domestic cases, and in the event payment is not made within the discount period, invoices are due and payable within thirty days from date of invoices.

"6. When milk is required to be packed in export cases, wooden cases No. 1, No. 2, and No. 3 in accordance with the standard specifications for canned food boxes as adopted by the United States Food Administration January, 1918, and modified by the War Department bulletin issued by the office of the Quartermaster General, subsistence division, inspection branch, being bulletin No. 32 issued under date of August 15, 1918, the buyers shall pay an additional price for milk packed in such boxes, equal to the difference between the cost each month of regular domestic boxes and such export boxes, such difference to be determined by the Federal Trade Commission or by some other agency which may be agreed upon between the buyers and the manufacturers. * * *

"8. The milk manufacturers agree that profit made on sales to the Army, Navy, and Marine Corps as an average for the period in question shall not be more than 42¢ per case on evaporated milk and 59¢ per case on condensed milk, calculated on the basis of Federal Trade Commission cost accounting as set forth in the pamphlet issued by the Federal Trade Commission under date of July, 1917, entitled 'Uniform Contracts for Cost Accounting, Definitions, and Method.'

"The 42¢ per c/s profit on evaporated milk and 59¢ per case profit on condensed milk represents the same margin of profit as a net profit of 30¢ per case on evaporated milk and 40¢ per case on condensed milk, the higher figures being reached by agreement with the Army, Navy, and Marine Corps to meet the Federal Trade Commission basis of accounting, which does not take into account certain items of cost which are regularly borne by the industry.

"At the close of the period during which supplies may be purchased on this basis, following January 1, 1919, investigation of the costs by the respective companies shall be made by the Federal Trade Commission or some other agency agreed upon by the buyers and manufacturers. In the event that any manufacturer has made, during the period, an average of more than 42¢ per case on evaporated milk, and 59¢ per case on condensed milk, the excess above such margin of profit shall be refunded by the respective manufacturers to the Army, Navy, or Marine Corps, respectively. In the event a manufacturer has made less than 42¢ per case profit on evaporated, and 59¢ per case on condensed milk, neither the Army, Navy, nor Marine Corps shall be obligated to make any additional payments."

On the facts set forth in findings 3, 4, and 5 is based the agreement which covered the period of fourteen months from November 1, 1917, to December 31, 1918, during which

time the plaintiff furnished the defendant evaporated milk only.

6. Pursuant to said agreement the Army, the Navy, and the Marine Corps purchased from the plaintiff during November and December, 1917, a total of 34,676 cases of evaporated milk, for which plaintiff was paid a total of $188,776.24, and during the calendar year 1918, 543,781 cases of evaporated milk, making a total of 578,457 cases during the entire fourteen months' period, for which plaintiff received the total sum of $2,986,392.16.

7. Subsequent to January 1, 1919, the United States Federal Trade Commission, to which was referred the matter of making an investigation for the purpose of determining the cost of production and the average profit, as provided in the contract, made an audit of plaintiff's books of account. For the reason, however, that plaintiff opened and closed its inventories semiannually, it was impracticable to calculate from plaintiff's books and records the purchases and actual cost of production of said milk for the months of November and December, 1917, on the cost accounting basis as set forth in said pamphlet issued by the Federal Trade Commission under date of July, 1917, entitled "Uniform Contracts for Cost Accounting, Definitions, and Method." Therefore Mr. Adolph Meyer, the treasurer of and representing plaintiff company, upon being so advised by the Federal Trade Commission's examiner in charge of the audit, agreed that the costs for those months should be calculated by the Commission upon the basis of applying to such months the average monthly cost for the six-months' period ended December 31, 1917. The audit of the Federal Trade Commission disclosed that on the total shipments during the two months of November and December, 1917, plaintiff made a profit of $11,117.56 in excess of 42 cents per case. The said audit further disclosed that on the total shipments during the year 1918, from January 1 to December 31, the plaintiff received $152,936.99 less than the maximum profit allowable by the agreement. The audit and report of the Federal Trade Commission showed that for the entire fourteen months covered by the agreement the plaintiff's average profit on all its sales to the government during the said period was approximately 15½ cents per case.

8. The claimed indebtedness of $11,117.56, against which the Comptroller General applied the amount due the plaintiff, represented the profit to the plaintiff in excess of 42 cents per case computed upon shipments of milk during the months of November and December, 1917, only. Plaintiff's profit on sales made to the Army, Navy, and Marine Corps during the period November 1, 1917, to December 31, 1918, as an average for the period, was approximately 15½ cents per case.

G. Mason Owlett, of Wellsboro, Pa. (Crichton & Owlett, of Wellsboro, Pa., on the brief), for plaintiff.

Percy M. Cox, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and WHALEY, WILLIAMS, GREEN, and LITTLETON, Judges.

LITTLETON, Judge.

A new trial was allowed in this case on motion of the plaintiff. The position of the plaintiff is that under the arrangements and the agreement with the defendant it was not liable for any refund to the government for shipments of milk made to the military establishments unless it had made more than an average profit of 42 cents per case, calculated on the total shipments over the entire period of fourteen months covered by the agreement; that the audit made by the Federal Trade Commission showed that for the period of the fourteen months covered by the agreement the plaintiff's average profit did not exceed 15½ cents per case.

The position of the defendant in support of its counterclaim is that the audit of the Federal Trade Commission showing an overpayment of $11,117.56 is conclusive, and its defense to the right of the plaintiff to recover rests entirely upon the finality of the audit. The defendant further insists that, if the court should decide that plaintiff is entitled to recover, interest should not be allowed on the amount of $11,133.54, allowed and certified by the Commissioner of Internal Revenue.

The position of the defendant on the question of interest is, first, that the provisions of the Act of March 3, 1875 (31 USCA § 227), allowing interest do not apply where payment is withheld by the Comptroller General; and, secondly, that, if the court should hold the act to be applicable when the Comptroller General withholds payment, the plaintiff is not entitled to interest in this case, because the act does not authorize the allowance of interest on interest.

We are of opinion that defendant's counterclaim cannot be sustained and that plaintiff is entitled to recover. The facts show that it was agreed between plaintiff and the defendant that plaintiff should be entitled to a maximum average profit of 42 cents per case upon the total shipments of milk to the military establishments over the entire period of fourteen months rather than a profit of 42 cents per case on shipments made during any portion of said period, or upon shipments to each military department. We think the agreement set forth in the findings provides for this method of calculating the maximum average profit to which plaintiff was entitled. Libby, McNeill & Libby v. United States, 65 Ct. Cl. 341. The testimony of the witnesses in the case accords with this view.

The audit of the Federal Trade Commission shows that for the period of fourteen months covered by the contract in question plaintiff's average profit per case of the total shipments of 578,457 cases was approximately 15½ cents. The report of the Commission contains a calculation showing the total payments made to the plaintiff for shipments of 34,676 cases of milk to the Army and Navy Departments during two months of the entire fourteen months' period covered by the contract exceeded a profit of 42 cents per case in the amount of $11,117.56. We think, however, that this calculation was not in accordance with the contract, and, in view of the contract provisions, was not binding and conclusive upon the plaintiff. Paragraph 8 of the contract provided that the average profit of 42 cents per case for the fourteen months' period should be "calculated on the basis of Federal Trade Commission cost accounting," and that at the close of the fourteen months' period following January 1, 1919, "investigation of the costs by the respective companies shall be made by the Federal Trade Commission or some other agency agreed upon." It was further agreed that, in the event any manufacturer made, during the period, an average profit of more than 42 cents per case, a refund of the excess would be made. The investigation provided for was limited to the ascertainment of costs by the manufacturers in accordance with the method of cost accounting as set forth in the Federal Trade Commission's pamphlet issued in July, 1917, entitled "Uniform Contracts for Cost Accounting, Definitions, and Method." The contract fixed the average profit and provided the manner in which it should be calculated. We are of opinion that under the language of the contract the plaintiff did not agree to be bound by a determination of costs that did not conform to the method of cost accounting provided in the Federal Trade Commission's pamphlet of July, 1917, and that plaintiff did not agree to be bound by the auditor's calculation of the average profit if it should not accord with the agreement. When the parties to a contract submit the decision of a particular matter to the judgment of an officer or agency, such decision will not be reviewed by the courts except under certain circumstances, United States v. Gleason, 175 U. S. 588, 20 S. Ct. 228, 44 L. Ed. 284; but where, as here, the contract provides that the designated official or agency shall determine a matter in a particular manner, such determination is not binding and conclusive unless the contract specifically so provides. In either event, the decisions may be impeached for fraud or mistakes so gross as necessarily to imply bad faith or failure to exercise an honest judgment.

The plaintiff does not question the Federal Trade Commission's calculation of its cost with respect to the 578,457 cases of milk shipped. These costs were calculated in accordance with the pamphlet of July, 1917, in compliance with the contract. The manner in which the alleged excess profit of $11,117.-56 was calculated in the Federal Trade Commission's report was contrary to the agreement. The matter of allowable profit was not submitted to the judgment of the Federal Trade Commission, and there is no provision in the agreement that its calculation thereof should be final and conclusive. Plaintiff is entitled to recover $11,133.54.

This amount was duly allowed by legal authority as interest due to the date of such allowance on an overpayment of tax previously allowed and credited to a tax due for another taxable period. The defendant does not question the correctness of the Commissioner's allowance, but contends that the plaintiff is not entitled to interest thereon under the Act of March 3, 1875. This question has been before the courts in other cases in which it was held that interest was allowable under the Act of March 3, 1875, upon a withholding by the Comptroller General. Libby, McNeill & Libby v. U. S., supra; Colorado Condensed Milk Co. v. United States, 48 F. (2d) 682, 70 Ct. Cl. 671; Mohawk Condensed Milk Co. v. United States, 48 F. (2d) 682, 70 Ct. Cl. 671; James Stewart & Co. v. United States, 71 Ct. Cl. 126; United States

v. La Grange Grocery Co. (D. C.) 31 F. (2d) 297; Standard Dredging Co., 71 Ct. Cl. 218, 249; Briggs & Turivas, Inc., v. United States, 72 Ct. Cl. ——, 53 F. (2d) 140.

■ On the authority of the decisions in the cases above cited we hold that the plaintiff is entitled to interest at 6 per cent. per annum on $11,133.54 from the date on which payment thereof was withheld by the Comptroller General. Although this amount represented interest allowed on an overpayment of tax wrongfully and illegally collected, we think this is not material to the question whether plaintiff is entitled to interest thereon under the Act of March 3, 1875. The amount represents a claim duly allowed by legal authority; it was presented for payment, and payment of the claim was withheld and offset against an alleged debt due the United States without the assent of the plaintiff. No suit was brought by the United States to collect the alleged indebtedness due it until the counterclaim was filed herein. We have decided that plaintiff was and is not indebted to the United States. It seems clear, therefore, that under the Act of March 3, 1875, plaintiff is entitled to interest on the "amount withheld."

The record does not disclose the exact date on which the Comptroller General withheld payment. Entry of judgment will therefore be suspended to await the filing by the parties of a statement or stipulation showing the date on which the Comptroller General withheld payment of $11,133.54.