### HIGHLAND MILK CONDENSING CO. v. UNITED STATES.

#### No. E–588.

Court of Claims.
March 7, 1932.

This suit is for the recovery of $5,694.95, representing an overpayment of capital stock excise tax in the amount of $4,943, together with interest thereon in the amount of $751.95 allowed by the Commissioner of Internal Revenue November 1, 1924, and certified to the Comptroller General for payment. The correctness of the Commissioner's allowance is not questioned.

The Comptroller General withheld payment of the amount and applied it as a partial set-off against an alleged indebtedness of $22,751.39, representing a claimed overpayment by the United States to plaintiff for shipments of evaporated milk to the War and Navy Departments prior to January 1, 1919. Plaintiff admits an indebtedness to the defendant of $1,000 as an overpayment made to it for evaporated milk sold to the government, and claims that $4,694.95 of the tax overpayment was erroneously withheld by the Comptroller General. Plaintiff further claims interest under the Act of March 3, 1875, on $4,694.95 from November 1, 1924, the date of which payment was withheld by the Comptroller General.

The defendant in its amended counterclaim asks judgment against the plaintiff for an overpayment of $16,736.24 less the offset of $5,694.95, or $11,041.29, plus $5,857.64, being interest at 6 per cent. per annum on $16,736.24 from January 1, 1919, to November 1, 1924, plus the further sum of $4,140.48, being interest at 6 per cent. per annum on $11,041.29 from November 1, 1924, to January 31, 1931, totaling $21,039.41.

The question is whether under the terms of the agreement hereinafter set forth the plaintiff was overpaid in any amount for evaporated milk shipped to the War and Navy Departments of the government, and, if it was not overpaid in an amount equal to its claim, whether plaintiff is entitled to interest on the balance due it from the date on which payment thereof was withheld by the Comptroller General.

Special findings of fact:

1. Prior to 1918 the plaintiff, a Pennsylvania corporation, was engaged in the manufacture of evaporated milk. Since January 1, 1920, it has not operated its plants; they having been leased to and operated by the Pet Milk Company, a Delaware corporation,

and the plaintiff has not carried on any business since that date.

2. Between July 31, 1920, and July 31, 1923, inclusive, the Commissioner of Internal Revenue assessed and collected from the plaintiff $4,943, capital stock excise tax for the fiscal years ending June 30, 1921, to June 30, 1924, inclusive.

3. April 16, 1924, plaintiff duly filed a claim for refund of all such taxes unlawfully assessed and collected.

On or about November 1, 1924, the Commissioner of Internal Revenue duly allowed said claim for refund in the full amount thereof, to wit, $4,943, together with interest thereon in the amount of $751.95, making an aggregate allowance of $5,694.95, and certified such amount to the Comptroller General for payment. The Comptroller General, by certificate No. 052300–T, dated November 1, 1924, withheld payment of the sum of $5,-694.95, otherwise due plaintiff as a refund of taxes erroneously collected, and interest thereon, and applied the same as a partial set-off against $22,751.39, then alleged to be due by plaintiff to the United States as an overpayment for evaporated milk furnished to the military establishments of the United States.

The first overpayment of tax by plaintiff was made on July 31, 1920, in the amount of $1,171.

4. September 7, 1917, the United States Food Administration invited the manufacturers of milk to hold a conference with a view to making suggestions as to fixing prices during the war, and a conference was held at Washington, September 26, 1917, of the manufacturers of evaporated and condensed milk. At this conference plaintiff was present. On a roll call vote taken, the manufacturers were unanimously in favor of voluntary regulation.

It was moved that 30 cents per case on evaporated milk and 40 cents per case on condensed milk would be a fair and reasonable profit to recommend to the Food Administration, and by a standing vote the industries represented at the meeting unanimously recommended these figures.

A circular, No. 272, United States Food Administration, Public Information Division, states in part as follows:

"Manufacturers of canned milk representing ninety-five per cent of the entire industry in the United States in conference with the United States Food Administration to-day agreed voluntarily and unanimously to submit their business to the supervision of the Food Administration during the period of the war and to take no war profits but to make the profit on their goods sold to the public the same as on goods to the Army and Navy.

"Since the first of May they have been furnishing supplies to the Army and Navy at a price and on a basis of profit determined by the Federal Trade Commission. This they obligated themselves in their conferences to-day to continue throughout the war, and further they agreed to supply the Commission for Relief in Belgium and the American Red Cross at the same prices as that made to the Government.

"The canned-milk men expressed their willingness to cooperate with the Food Administration by limiting the price to the public so as not to return to the industry a greater profit than was received before the war. During that period, they declared, a profit of 30¢ a case on evaporated milk and 40¢ a case on condensed milk was considered fair. In meeting the greatly increased demand on account of needs created by the war, the manufacturers said they had found difficulties in the increased price of fresh milk and the high cost of tin plate. These have forced the increased prices for their product during the last 18 months. The only way in which they as manufacturers can limit the cost of their commodity to the public, they declared, is through the limitation of profits, since they can not control the cost of the raw materials upon which they depend."

5. The negotiations and conferences between the committee of milk manufacturers and the government were with the Food Purchase Board, created by executive order of the President, which Board was composed of a representative of the Army, one from the Navy, one from the Federal Trade Commission, one from the Food Administration, and one from the Marine Corps to co-ordinate the purchases of armed forces and others, to ascertain the available supplies of the respective commodities, to determine if the demand exceeded the supply, to take under control such commodities as were not already covered by the Food Administration Act, to allocate such control of commodities, and to recommend to the respective heads of the departments methods of purchase and the prices to be paid. As a result of the conferences between the milk manufacturers' war committee, of which the plaintiff was a member, and the Food Purchase Board between September 7 and November 1, 1917, it was agreed that the manufacturers of evaporated milk would

furnish milk upon orders from the various military establishments, after consideration by the Food Purchase Board of the prices to be paid from time to time for a period of fourteen months from November 1, 1917, to December 31, 1918. It was further agreed and understood that at the end of that period the profit per case on sales made to the government by each milk company should be calculated on the basis of the Federal Trade Commission cost accounting, as set forth in a pamphlet issued by the Federal Trade Commission in July, 1917, entitled "Uniform Contracts for Cost Accounting, Definitions, and Method," and that each manufacturer would be allowed an average profit during the said period of fourteen months of 42 cents per case on evaporated milk and 59 cents per case on condensed milk, calculated on the total number of cases furnished to the various military establishments. It was further agreed and understood by the representatives of the government and the milk manufacturers that, if in the event any manufacturer had made during the fourteen months' period an average profit on the total number of cases of milk furnished of more than 42 or 59 cents per case, the excess of such margin of profit would be refunded by the respective manufacturers to the Army, Navy, or Marine Corps, respectively.

6. December 2, 1918, the milk manufacturers' war committee, of which plaintiff was a member, wrote the Food Purchase Board of the United States Food Administration in part, as follows:

" * * * In view of the fact that the entire agreement between the milk manufacturers' war committee and the Army, Navy, and Marine Corps has not heretofore been reduced to writing in a single document, the committee sets forth the following as its understanding of the agreement, as it has existed in the past, and as it shall continue for the above designated period, with the exception of two slight modifications, which will be noted hereafter.

"1. It is the understanding of the committee that the Army, Navy, and Marine Corps shall purchase their requirements as nearly as may be from month to month, proper allowance being made for such reserves as it may be necessary to carry regularly against future needs. * * *

"3. The Army, Navy, and Marine Corps shall place their requisitions with the division of coordination of purchase of the Food Administration each month at such time as to enable this division to make the allotments to the several manufacturers and to notify such manufacturers of the allotments on or before the 20th day of the month of prompt shipment. The division of coordination of purchase shall allot the supplies so requisitioned to the several manufacturers in proportion to the respective pack of each manufacturer, and the Army, Navy, and Marine Corps shall place their orders with the respective manufacturers for the amounts allotted to each by the division of coordination of purchase. Orders shall be placed after the 20th of the month only for shipment in a subsequent month in which shipment is designated to be made. This provision eliminates the emergency orders which have heretofore been provided for.

"4. Complete shipping instructions shall be given to each manufacturer on orders placed with him within twenty-five days from the date on which the allotment is made to the said manufacturer by the Division of Coordination of Purchase. (The twenty-five-day period is substituted for the twenty-day period heretofore prevailing.) Provided, however, that on orders placed after the 20th of the month for shipment in a subsequent month shipping instructions shall be given within twenty-five days of the first day of such month. Failure on the part of the Army, Navy, or Marine Corps to give shipping instructions within the time herein specified, shall entitle the manufacturer, at his option, to cancel the allotment or to bill the goods to the Army, Navy, or Marine Corps at the price prevailing in the subsequent month in which shipping instructions are finally given, provided, however, that failure to give shipping instructions within the time provided shall not entitle the Army, Navy, or Marine Corps to claim a subsequent month's price where such price is lower than the price prevailing in the month for which requisition is made.

"5. The price which the Army, Navy, and Marine Corps shall pay for milk purchased in respective months shall be determined as follows:

"The milk manufacturers war committee shall, on or about the first of each month, certify to the Food Purchase Board the then prevailing market price per case, to the domestic population, of evaporated milk, consisting of forty-eight one-pound cans, and the then prevailing market price of condensed milk, consisting of forty-eight fourteen-ounce cans.

"From this market price there shall be deducted 25 cts. per case on evaporated milk as a freight allowance on account of purchases made 'fob' plants, and 22 cts. per case on sweetened condensed milk, so long as present existing freight rates prevail.

"Except for the period of October, November, and December, 1918, the price has been determined on the basis of two districts:

"District No. 1, including all of the United States, except Oregon, Washington, and California.

"District No. 2, including these States.

"It was the understanding of the committee that the differentials in price for these districts have been waived from month to month for the three months just named, but not abandoned, as a matter of principle.

"Whenever prices are made for the separate districts the freight adjustments shall be made on the basis of a deduction of 13 cts. per case on evaporated milk for district No. 2.

"In addition to the above-mentioned freight deductions, the Army, Navy, and Marine Corps shall be entitled to a further deduction of 5 cts. per case from the market price which was originally made as an allowance on account of presumed saving to the manufacturer in selling expense.

"The Army, Navy, and Marine Corps shall be entitled to a discount of 2% on all invoices for which payment is made within eight days from receipt by the buyer of invoices correctly drawn, in accordance with the provisions of the contracts, and accompanied by papers prescribed in the contracts, or from the dates of receipt by the buyer of the signed contracts, if said signed contracts are not received prior to receipt of invoices. The price determined as above is the net price f. o. b. manufacturers plant for milk packed in regular domestic cases, and in the event payment is not made within the discount period, invoices are due and payable within thirty days from date of invoices.

"6. When milk is required to be packed in export cases, wooden cases No. 1, No. 2, and No. 3, made in accordance with the standard specifications for canned food boxes, as adopted by the United States Food Administration, January, 1918, and modified by the War Department bulletin issued by the office of the Quartermaster General, subsistence division, inspection branch, being Bulletin No. 32 issued under date of August 15, 1918, the buyers shall pay an additional price for milk packed in boxes, equal to the difference between the cost each month of regular domestic boxes and such export boxes, such difference to be determined by the Federal Trade Commission or by some other agency which may be agreed upon between the buyers and the manufacturers. * * *

"8. The milk manufacturers agree that profit made on sales to the Army, Navy, and Marine Corps as an average for the period in question shall not be more than 42¢ per case on evaporated milk and 59¢ per case on condensed milk, calculated on the basis of Federal Trade Commission cost accounting as set forth in the pamphlet issued by the Federal Trade Commission under date of July, 1917, entitled 'Uniform Contracts for Cost Accounting, Definitions, and Method.'

"The 42¢ per case profit on evaporated milk and 59¢ per case profit on condensed milk represents the same margin of profit as a net profit of 30¢ per case on evaporated milk and 40¢ per case on condensed milk, the higher figures being reached by agreement with the Army, Navy, and Marine Corps to meet the Federal Trade Commission basis of accounting, which does not take into account certain items of cost which are regularly borne by the industry.

On the facts set forth in findings 4, 5, and 6 is based the agreement which covered the period of fourteen months from November 1, 1917, to December 31, 1918, during which time the plaintiff furnished the defendant evaporated milk only.

7. Pursuant to the agreement, the War Department purchased from plaintiff during November and December, 1917, 9,000 cases of evaporated milk, tall size, for domestic and

export shipment, for which it paid $49,450, and during 1918, from January 1, to December 31, the same department purchased from plaintiff 87,286 cases of evaporated milk, tall size, for which it paid the plaintiff $467,576.92, making a total of 96,286 cases purchased by the War Department during the entire fourteen months' period, for which plaintiff received the total sum of $517,026.92.

During November and December, 1917, the Navy Department purchased from plaintiff 3,500 cases of evaporated milk, tall size, for export shipment, for which it paid plaintiff $18,900, and during 1918, from January 1 to December 31, the same department purchased from plaintiff 14,834 cases of evaporated milk, tall size, for export shipment, and 8,333 cases "baby" or small size, for which it paid plaintiff $97,573.72, making a total of 26,667 cases purchased by the Navy Department during the entire fourteen months' period, for which plaintiff received the total sum of $116,473.72.

The total purchases by the War and Navy Departments during the entire fourteen months' period were 122,953 cases of all sizes, for which plaintiff was paid a total of $633,500.64.

8. Upon termination of the period beginning November 1, 1917, and ending December 31, 1918, covered by the agreement involved in this case, and subsequent to January 1, 1919, the Federal Trade Commission made an investigation of plaintiff's costs and its original report showed an overpayment to plaintiff of $22,751.39. The computation made by the Federal Trade Commission in this report was not in accordance with the agreement between the plaintiff and the government. The correct computation made in accordance with the agreement shows that in the purchase of evaporated milk by the Army and the Navy between November 1, 1917, and December 31, 1918, plaintiff was paid a total profit of $1,000 in excess of the 42 cents maximum profit per case allowable under the agreement hereinbefore set forth.

G. Mason Owlett, of Wellsboro, Pa. (Crichton & Owlett, of Wellsboro, Pa., on the brief), for plaintiff.

Percy M. Cox, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before · BOOTH, Chief Justice, and WHALEY, WILLIAMS, GREEN, and LITTLETON, Judges.

LITTLETON, Judge.

A new trial was allowed in this case on motion of the plaintiff. The questions involved are the same as in Helvetia Milk Condensing Co., Inc., v. United States (Ct. Cl.) 56 F.(2d) 676, decided this date. The Federal Trade Commission in its original audit calculated an overpayment to plaintiff of $22,751.39. This calculation, however, was not in accordance with the agreement set forth in the findings. The facts on retrial are stipulated, and they show that, in the purchase of evaporated milk by the Army and the Navy Departments during the period November 1, 1917, to December 31, 1918, the defendant paid the plaintiff $1,000 in excess of the 42 cents maximum profit per case allowable under the agreement set forth in the findings. Plaintiff asks judgment for $4,694.95, with interest from November 1, 1924. Defendant insists, however, that it is entitled to interest on the overpayment of $1,000 from ·and·after December 31, 1918. It further insists that the plaintiff is not entitled to interest on any portion of the overpayment of tax and interest allowed by the Commissioner of Internal Revenue and withheld by the Comptroller General.

For the reasons stated in Helvetia Milk Condensing Co. ·v. United States, supra, we are of opinion that the original audit and report of the Federal Trade Commission were not final and conclusive on the plaintiff. Plaintiff was paid $1,000 on purchases of evaporated milk by the Army and the Navy during the period covered by the contract in excess of the maximum average profit of 42 cents per case allowable under the agreement. The defendant's counterclaim is therefore allowed for $1,000. The defendant is also entitled to interest. Although plaintiff made an overpayment of tax of $1,171 on July 31, 1920, which was in excess of the amount then due the defendant, the plaintiff was allowed interest of $751.95 on this and subsequent overpayments, aggregating $4,943 from the dates of payments to November 1, 1924. The defendant is therefore allowed interest in the amount of $350.17, being 6 per cent. per annum on $1,000 from January 1, 1919, to November 1, 1924, inclusive.

The plaintiff is entitled to recover the balance of the amount withheld of $4,344.78, with interest at 6 per cent. per annum, under the Act of March 3, 1875 (31 USCA § 227), from November 1, 1924, until paid. It is so ordered.