Maurice L. BIANCHI, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 98–794C.

United States Court of Federal Claims.

Feb. 14, 2000.

Gerson B. Kramer, Washington, DC, for Plaintiff. George E. Graziadei, and Scott Michael Cantor, Las Vegas, NV, of Counsel.

Jan M. Folena, U.S. Department of Justice, Washington, DC, with whom were Acting Assistant Attorney General David W. Ogden, Director David M. Cohen, and Assistant Director Kirk T. Manhardt, for Defendant. Kathleen D. Hallam, Defense Supply Center, Philadelphia, PA, of Counsel.

## OPINION

FIRESTONE, Judge.

This case comes before the court on the defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(4) of the Rules of the United States Court of Federal Claims. At issue is whether the plaintiff is entitled to interest on an award of attorney fees, which the government refused to pay pending the outcome of litigation on other claims against the plaintiff. The government contends that sovereign immunity bars the plaintiff's claim for interest. The plaintiff contends that the

Federal Offset Statute, 31 U.S.C. § 3728 (1994 & Supp. II 1996), provides the necessary waiver of immunity and mandates that interest be paid.

## FACTUAL BACKGROUND

The facts are not in dispute and may be summarized as follows. This case is the latest in a series of cases arising from contracts for military clothing entered into between Mr. Bianchi and the Defense Logistics Agency ("DLA") in 1979 and 1980. Numerous problems led to termination of the contracts. Litigation over the contracts before the Armed Services Board of Contract Appeals ("ASBCA") led to a settlement between Mr. Bianchi and the DLA for $1,141,220.83, including interest. Under the terms of the settlement agreement Mr. Bianchi reserved his right to pursue a value engineering claim and a claim for attorney fees under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 (1994 & Supp. II 1996). The present action concerns the $475,724.51 EAJA award Mr. Bianchi eventually obtained from the ASBCA on September 25, 1990.

Shortly after the government paid the $1,141,220.83 to Mr. Bianchi, Bank of America ("Bank") sued the United States in this court, claiming that it was owed the money paid to Mr. Bianchi under various assignment agreements between the Bank and Mr. Bianchi. *See Bank of America Nat'l Trust & Sav. Ass'n v. United States,* No. 90–3961C, 1992 WL 677195 *1 (Ct.Cl. Oct.16, 1992). In response, the United States claimed that the Bank was not owed the money because the loans had been guaranteed by the Small Business Administration ("SBA"). *See id.* The United States contended that the SBA was due the money. *See id.* The United States then filed a third-party complaint against Mr. Bianchi in the same action seeking to recover the $1,141,220.83 on behalf of the SBA. *See id.* While the litigation over the $1,141,220.83 settlement award was pending, the DLA refused to pay Mr. Bianchi the $475,724.51 EAJA award. In correspondence with Mr. Bianchi, the DLA explained that the DLA (which was responsible for

paying the EAJA award) was holding the EAJA award as an offset against the $1,141,220.83 the United States believed Mr. Bianchi owed the SBA.

Eventually, the Federal Circuit heard these competing claims. *See Bank of America Nat'l Trust & Sav. Ass'n v. United States,* 23 F.3d 380 (Fed.Cir.1994). The Federal Circuit ruled that the United States would have to pay Bank of America $1,141,220.83, in accordance with the terms of the Bank's assignment with Mr. Bianchi. *See id.* at 385. The Circuit rejected the United States' argument that the SBA was owed the funds due to the Bank on the grounds that the Bank's assignment rights were superior to the SBA's rights and were not subject to an offset. *See id.* at 384–85. The Circuit also held that the United States, having voluntarily agreed to settle Mr. Bianchi's contract claims, could not "recover the settlement award through a third-party complaint filed in the Court of Federal Claims." *Id.* at 384. Thus, the Circuit held that Mr. Bianchi did not have to repay his settlement to the United States. *See id.*

Arguing that the settlement before the ASBCA did not free Mr. Bianchi from paying the SBA guaranteed loan amounts from the value engineering and EAJA awards, the DLA continued to hold Mr. Bianchi's EAJA award as an offset. In response, Mr. Bianchi filed actions in federal district court in Nevada to compel the government to pay him his value engineering and EAJA awards.[1] The EAJA case reached the Ninth Circuit, which held that the offsets were improper given the Federal Circuit's decision in *Bank of America* and that Mr. Bianchi must be paid his EAJA award. *See Bianchi v. Perry,* 140 F.3d 1294 (9th Cir.1998). On August 28, 1998, the DLA paid Mr. Bianchi the $475,724.51 EAJA award from the DLA's agency account in Columbus, Ohio. Mr. Bianchi did not receive interest on the award.

On October 15, 1998, Mr. Bianchi filed the present action seeking interest on his award of attorney fees under the Federal Offset

---

1. Mr. Bianchi's value engineering award was litigated separately and is not now before this court. *See Bianchi v. Walker,* 163 F.3d 564 (9th Cir.1998).

Statute, 31 U.S.C. § 3728(c).[2] The Federal Offset Statute provides, in relevant part: "[i]f the Government loses a civil action to recover a debt or recovers less than the amount the Comptroller General [now, the Secretary of the Treasury][3] withholds under this section, the Comptroller General shall pay the plaintiff the balance and interest of 6 percent for the time the money is withheld." *Id.*

The government moved to dismiss the claim for interest on the EAJA award on June 30, 1999. On July 30, 1999, Mr. Bianchi filed a cross motion for summary judgment. The court held oral argument on these motions on February 1, 2000.

## DISCUSSION

### A. Standard of Review

In deciding a motion to dismiss for lack of subject matter jurisdiction, the court must accept as true the allegations of fact made by the plaintiff, and it must construe those facts favorably to the plaintiff. *See Morris v. United States,* 33 Fed.Cl. 733, 741 (1995). Ultimately, however, the burden is on the plaintiff to establish jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988).

### B. Sovereign Immunity

 The sole issue to be decided in this case is whether the United States has waived its sovereign immunity to allow for the payment of interest on the EAJA award the DLA withheld as an offset. The jurisdiction of the Court of Federal Claims to award

interest depends upon the extent to which the United States has waived its sovereign immunity. Congress has expressly provided that "[i]nterest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof." 28 U.S.C. § 2516 (1994); *see also Library of Congress v. Shaw,* 478 U.S. 310, 314, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). As with any waiver of sovereign immunity the waiver must be strictly construed and the court may "not enlarge the waiver beyond what the language requires." *Library of Congress,* 478 U.S. at 317, 106 S.Ct. 2957 (citing *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–86, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)). As the Supreme Court stated in *Christianson .v. Colt Indus. Operating Corp.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), "a court may not ..., *even in the interest of justice,* extend its jurisdiction where none exists." (Emphasis added).

It is against this backdrop that the court must determine whether the Federal Offset Statute authorizes interest in this case. At issue is whether the Federal Offset Statute allows for interest where the payment request is not presented to the Comptroller General (or now, the Secretary of Treasury) as the Federal Offset Statute provides, *see* 31 U.S.C. § 3728, but instead the payment request is presented to the responsible agency, as EAJA expressly provides, *see* 5 U.S.C. § 504(d). In particular, EAJA § 504(d)(4) provides that "[f]ees and other expenses awarded under this subsection shall be paid by any agency over which the party prevails

2. Mr. Bianchi filed an amended complaint on January 6, 1999, which made an additional claim against the United States. Mr. Bianchi's second count sought interest on the Federal Circuit's award of $1,870.04 in costs in *Bank of America,* 23 F.3d at 380. On June 30, 1999, the parties entered into a joint stipulation of dismissal with prejudice of Count II.

3. The Federal Offset Statute has been revised twice since its original enactment to reflect Congress' transfer of authority over the payment of claims from the Secretary of the Treasury to the Comptroller General, *see* Budget and Accounting Act, 42 Stat. 20 (1921), 31 U.S.C. § 71 (1964) and Act of March 3, 1933, ch. 212, § 13, 47 Stat.

1516, 31 U.S.C. § 227 (1964), and then, back to the Secretary of the Treasury, *see* Pub.L. No. 104–53, § 211, 31 U.S.C. § 501 note (Supp. II 1996) and 31 U.S.C. § 3728 (Supp. II 1996). At the time the DLA attempted to offset Mr. Bianchi's EAJA award in 1994, authority under the Federal Offset Statute was vested in the Comptroller General. However, in this case it is irrelevant which version of the statute is applied because, as explained below, Mr. Bianchi could not collect his EAJA award from the Comptroller General or the Secretary of the Treasury. EAJA expressly states that payment of EAJA awards is to be made by the agency. *See* 5 U.S.C. § 504(d).

*from any funds made available to the agency* by appropriation or otherwise." (Emphasis added).

In support of his claim for interest, Mr. Bianchi first contends the that the Federal Offset Statute provides for interest because it was the basis for the DLA's offset authority. Mr. Bianchi argues that the Federal Offset Statute is the only authority provided to agencies to offset "judgments" such as a final EAJA award. Mr. Bianchi asserts that agencies do not have any common law right to offset "judgments."

The government contends that Mr. Bianchi is mistaken in his assumption that the Federal Offset Statute is the government's sole authority to offset judgments. The government notes that the Federal Circuit has expressly determined that the government maintains a common law right to offset that is separate from any statutory authority. *See Cecile Indus., Inc. v. Cheney,* 995 F.2d 1052, 1053 (Fed.Cir.1993) ("Indisputably, the Government has long enjoyed the right to offset contract debts to the United States against contract payments due to the debtor."); *see also Amoco Prod. Co. v. Fry,* 118 F.3d 812, 817 (D.C.Cir.1997) ("[T]he federal government has long possessed the right of offset at common law.") (citations omitted). The government contends that the DLA had a common law right to offset the ASBCA's EAJA award to satisfy the SBA debt and that it did not have to depend on the Federal Offset Statute.

█ Whether the DLA has common law offset authority is an intriguing question, but it is not a question before this court. Rather, the only question this court needs to

resolve is whether the Federal Offset Statute provided the DLA with that authority, such that Mr. Bianchi is entitled to interest.[4] The Federal Offset Statute identifies only the Comptroller General (now the Secretary of Treasury) as having payment authority. Thus, the Federal Offset Statute did not cover the actions of the DLA. Where the words of a statute are plain, the words are controlling. *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Accordingly, unless the court can find some basis for ignoring the words of the Federal Offset Statute, the statute does not apply to the offset here and cannot provide the necessary waiver of sovereign immunity.

Mr. Bianchi argues that the plain terms of the Federal Offset Statute are not controlling because the statute has been construed to extend to government officials not named in the statute. Mr. Bianchi identifies several cases[5] in which interest was awarded even though the then-Federal Offset Statute named the Secretary of Treasury as the responsible official, but the claims were instead presented to the Comptroller General. *See United States v. La Grange Grocery Co.,* 31 F.2d 297, 298–99 (N.D.Ga.1929); *Standard Dredging Co. v. United States,* 71 Ct.Cl. 218, 240, 1930 WL 2458 (1930). At issue in those cases was an apparent conflict between the Budget and Accounting Act of 1921, 42 Stat. 20, 31 U.S.C. § 71 (1964), which had transferred authority to pay judgments against the United States from the Secretary of Treasury to the Comptroller General, and the Federal Offset Statute, which had not yet

---

**4.** Whether in the absence of the Federal Offset Statute, the DLA properly offset the EAJA award under a common law right is not at issue in this case. Either the DLA properly relied upon common law authority for the offset or its action was not lawful. In either of those situations, interest is not available because there has not been an express waiver of sovereign immunity.

**5.** Plaintiff cites: *United States v. La Grange Grocery Co.,* 31 F.2d 297 (N.D.Ga.1929); *Standard Dredging Co. v. United States,* 71 Ct.Cl. 218, 1930 WL 2458 (1930); *Mohawk Condensed Milk Co. v. United States,* 70 Ct.Cl. 671, 48 F.2d 682 (1930);

*Mohawk Condensed Milk Co. v. United States,* 70 Ct.Cl. 671, 48 F.2d 682 (1930); *James Stewart v. United States,* 71 Ct.Cl. 126, 1930 WL 2441 (1930); *Lloyd–Smith v. United States,* 71 Ct.Cl. 74, 44 F.2d 990 (1930); *Chicago, I. & L.R. Co. v. United States,* 78 Ct.Cl. 96, 1933 WL 1914 (1933); *Briggs & Turivas,* 72 Ct.Cl. 674, 53 F.2d 140 (1931); *Helvetia Milk Condensing Co. v. United States,* 74 Ct.Cl. 142, 56 F.2d 676 (1932); *Highland Milk Condensing Co. v. United States,* 74 Ct.Cl. 267, 56 F.2d 682 (1932); *Richmond F. & P.R. Co. v. McCarl,* 62 F.2d 203 (D.C.Cir.1932); *Helvetia Milk Condensing Co. v. United States,* 77 Ct.Cl. 743, 3 F.Supp. 662 (1933); and *American*

been amended to reflect this transfer of authority. As such, in order to give continued meaning to the Federal Offset Statute, the courts decided that when the Comptroller General pays a judgment or withholds payment under the Budget and Accounting Act, the Comptroller General is acting on behalf of the Secretary of Treasury. *See id.* Mr. Bianchi's contention that the same reasoning should apply to offsets made by agency heads with respect to EAJA awards is without merit. Contrary to Mr. Bianchi's contentions, the situations are not parallel.

In each of the cases Mr. Bianchi relies upon, the payments were to be made from the United States Treasury and not from a specific agency appropriation. Thus, at issue in those cases was how to deal with the transfer of administration over such payments from the Secretary of Treasury to the Comptroller General where Congress failed to change the Federal Setoff Statute. As the government explains in its brief, judgments presented to either the Comptroller General or the Secretary of Treasury under the Federal Offset Statute are not paid for out of an individual agency's appropriation, but from the Treasury (now the Judgment Fund).[6] In changing the person responsible for administration of payment of judgments, Congress was not changing the government's obligation to pay judgments from the Treasury. In both instances, the payments were to come from the same source. In contrast, by statute, EAJA awards may not be paid for from what is now the Judgment Fund, but must be paid for from agency appropriations. *See* 5 U.S.C. § 504(d).

When EAJA was first enacted, it provided that awards could be paid out of the Judgment Fund as a fallback if the agency failed to pay the award. As originally enacted, the statute provided "[i]f not paid by any agency, the fees and other expenses shall be paid in the same manner as the payment of final judgments is made in accordance with sec-

tions 2414 and 2517 of this title." Pub.L. No. 96–481, § 204, 94 Stat. 2321 (1980). Payments under sections 2414 and 2517 of Title 31 are made out of the Judgment Fund. *See* 31 U.S.C. § 1304. Thus, under the original EAJA, it was not mandatory that EAJA awards be paid out of the offending agency's own funds.

▆▆▆ However, when Congress reauthorized EAJA in 1985, it amended section 504(d) by removing the Judgment Fund as a source of payment and making agencies solely responsible for EAJA awards. The reason for this change was discussed by Senator Grassley, the bill's sponsor, who explained that under the amended act, "[agencies] are sure to think twice before acting contrary to a small business person's or an individual's rights. This is even more true with the passage of this bill, which provides for the fees payment out of the offending agency's budget." 131 Cong. Rec. S9991–02 (1985). It is well recognized that where Congress amends a statute, it is presumed to be aware of the original enactment and to intend to alter it. *See* 1A Norman J. Singer, *Sutherland's Statutory Construction,* § 22.30 at 266 (5th ed.1992, 1993). Accordingly, even if the court were inclined to find some flexibility in the Federal Offset Statute, EAJA precludes the court from reading the statute to include situations where an EAJA award is presented for payment.[7] Where by law payments must come from the agency's appropriation, the Federal Offset Statute plainly does not apply.

▆▆▆ In addition, Mr. Bianchi's contention that interest on his EAJA award is appropriate under EAJA without regard to the Federal Offset Statute is also without merit. In enacting EAJA, Congress expressly provided for interest on EAJA awards in certain limited circumstances. The EAJA interest provision states in relevant part:

*Potash Co. v. United States,* 80 Ct.Cl. 160, 8 F.Supp. 717 (1934).

**6.** Congress established the Judgment Fund in 1956 to provide a permanent appropriation, separate and apart from any individual agency appropriation, from which judgments against the United States could be paid. *See* 31 U.S.C. § 1304 (1994 & Supp. II 1996).

**7.** In view of the foregoing, Mr. Bianchi's contention that Congress is assumed to have enacted EAJA knowing about the Federal Offset Statute and intending to include EAJA awards within its ambit is without merit. If Congress had intended to include EAJA awards within the Federal Offset Statute it would have done so expressly.

If the United States appeals an award of costs or fees ... made against the United States under this section, and the award is affirmed ... interest ... shall run from the date of the award through the date of the mandate of affirmance.

28 U.S.C. § 2412(f) (1994). Thus, while EAJA provides for interest where the government loses a challenge to either the amount or entitlement to an EAJA award, the statute clearly does not provide for interest where, as in this case, the award is used as an offset against another debt.

Where, as here, Congress provides an express waiver of sovereign immunity with regard to interest payments for certain EAJA awards, the court may not assume that its failure to include interest where an EAJA award is used as an offset was a simple oversight. To the contrary, the court must assume that the decision was intentional. As the Federal Circuit recently stated, "[w]e are without power to rewrite a Congressional enactment to make it fit a case for which it was clearly not intended, no matter how compelling the case, particularly in light of the Supreme Court's mandate that Congress must expressly consent to an award of interest." *International Bus. Machines v. United States*, 201 F.3d 1367, 1374 (Fed.Cir.2000) (citing *Library of Congress*, 478 U.S. at 314, 106 S.Ct. 2957). The fact that EAJA provides for interest in some circumstances but not in others, indicates that Congress was aware of the necessity for an express waiver and intentionally declined to waive immunity in those instances where it remained silent.

Mr. Bianchi's claim that not allowing interest would be contrary to Congress' purpose in enacting EAJA is equally unavailing. The Federal Circuit has recognized that EAJA is "a fee shifting statute not a damage award statute." *Chiu v. United States*, 948 F.2d 711, 721 (Fed.Cir.1991). "Clearly, the statute does not contemplate full recoupment....It even more clearly does not contemplate recoupment of delay damages." *Chiu*, 948 F.2d at 721 (citing *Pierce v. Underwood*, 487 U.S. 552, 573, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)).

Similarly, Mr. Bianchi's concern that if interest is not allowed agencies may ignore

their EAJA obligations is misguided. Mr. Bianchi fails to separate out his entitlement to payment from his right to interest. There is no question that Mr. Bianchi was entitled to and did receive his EAJA award. The Ninth Circuit determined that Mr. Bianchi was entitled to the EAJA award and the agency has paid Mr. Bianchi. Whether Mr. Bianchi is also entitled to interest on that award is a separate question that is dependent on an express waiver of sovereign immunity, which the court concludes is not present here.

### CONCLUSION

In view of the foregoing, Mr. Bianchi's motion for summary judgment is **DENIED** and the government's motion to dismiss is **GRANTED**. Each party to bear its own costs.